



## OPINION

No. 04-10-00286-CR

Lee **TOLLEFSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, Wilson County, Texas
Trial Court No. 08-05-106-CRW
Honorable Stella Saxon, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Rebecca Simmons, Justice
Steven C. Hilbig, Justice (concurring in the judgment only)
Marialyn Barnard, Justice

Delivered and Filed:  August 31, 2011

AFFIRMED

A jury convicted Lee Tollefson of murdering Barbara Coull.  The trial court sentenced Tollefson to fifty years' confinement in the Texas Department of Criminal Justice–Institutional Division.  On appeal, Tollefson contends the trial court erred by admitting into evidence (1) items seized during the warrantless search of his trailer, and (2) expert opinion testimony based on testing performed by a non-testifying witness.

**BACKGROUND**

It is undisputed that Tollefson shot and killed Barbara. Lee Tollefson was living in his travel trailer on David and Barbara Coull's property. The trailer was connected to the utilities and was parked next to a vacant house. On the day of the incident, Tollefson testified he received a hysterical call from Barbara, accusing him of stealing a battery charger. After he hung up the phone, he fell asleep, only to be awakened by Barbara, who was in his trailer. Tollefson testified Barbara was yelling and cursing at him so he told her to get out of his house. Tollefson testified Barbara told him she was going to shoot him, and she left the trailer but started going through his truck. Tollefson further stated he knew he had a gun in his truck and believed Barbara was going for the gun. He claimed he leaned out the trailer door and told Barbara to get out of his truck. As she was standing on the running board of his truck, Tollefson testified Barbara pointed something shiny at him and said, "You are a dead son of a bitch." He testified this was when he grabbed a gun from his trailer and held it up so Barbara could see it while telling her to "get the hell out of here." He further testified Barbara kept coming at him until she raised her right hand and allegedly pointed something shiny at him. Tollefson stated he then shot Barbara because he believed she was going to shoot him.

After the shooting, Tollefson called the Wilson County Sheriff's Office to tell them he had shot and killed Barbara. After placing the call, Tollefson took all of the firearms out of his trailer, including the gun used to shoot Barbara and the gun from his truck, laid them on the patio outside the vacant house, and waited for the officers to arrive. When officers arrived, Tollefson was arrested.

After officers arrested Tollefson and took him to the Wilson County jail, they searched his trailer without a warrant. Officers found Tollefson's personal papers, including a check to

the Internal Revenue Service, a document purporting to transfer his possessions to a friend in exchange for one dollar, a note documenting grievances against the Coulls, prescription pill bottles that were mostly empty, and a live .25 caliber round.

At trial, the medical examiner testified there was no way to determine where Tollefson was standing when he shot Barbara, but Crystina Vachon, a trace-evidence analyst, estimated the muzzle of the weapon was six to nine inches from Barbara's clothing when it was fired. Vachon also testified the shots could not have been fired from any farther away than three to three and a half feet.

A jury found Tollefson guilty of murder. He then perfected this appeal.

### ISSUE 1: WARRANTLESS SEARCH

In his first issue, Tollefson contends the trial court erred by denying his motion to suppress the evidence seized during the warrantless search of his home. Tollefson contends the evidence was seized in contravention of the Fourth Amendment, Article 1, Section 9 of the Texas Constitution, and Article 1.06 of the Texas Code of Criminal Procedure. The State counters that the warrantless search was proper because several exceptions to the warrant requirement apply: (1) responding to an emergency call, (2) the automobile exception, and (3) plain view. The State further argues that even if the search was improper, it was harmless error because none of the evidence admitted had any effect on the outcome of the case.

At the pretrial hearing on the motion, Chief Deputy Johnie Deagen testified that before he arrived at the scene, other officers had performed a protective sweep of the trailer. After Tollefson was taken to the Wilson County jail, Chief Deputy Deagen testified that as he approached the trailer, he saw through the open door a note with a signature propped up near the telephone. Once inside the trailer, he testified he found prescription pill bottles, a live .25 caliber

round, a check to the IRS, a document purporting to transfer Tollefson's possessions to a friend, and a handwritten note documenting Tollefson's grievances against the Coulls. Chief Deputy Deagen seized these items without first obtaining a search warrant.

### *Standard of Review/Applicable Law*

A trial court's ruling on a motion to suppress is reviewed under a bifurcated standard. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). A trial court's determination of historical facts will be given almost total deference, while the trial court's application of the law will be reviewed de novo. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). When the trial court does not issue findings of fact and none are requested, as in this case, we imply findings that support the trial court's ruling if the evidence, viewed in the light most favorable to the ruling, supports those findings. *See State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006). "[T]he trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George*, 237 S.W.3d at 725. A trial court's ruling on a motion to suppress will be upheld if there is any valid theory of applicable law to the case, even if the trial court did not base its decision on that theory. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

The Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution guarantee the right to be secure against unreasonable searches. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. A search or seizure conducted without a warrant is per se unreasonable absent a recognized exception to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967); *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000).

The State argues three exceptions to the warrant requirement were applicable in this case: (1) responding to an emergency call; (2) the automobile exception; and (3) plain view. We will address each exception in turn.

*Responding to an Emergency Call*

The State relies on *Johnson v. State* to argue that because Tollefson called police to report the shooting, he implicitly consented to the search of his travel trailer. 226 S.W.3d 439 (Tex. Crim. App. 2007). Tollefson responds that *Johnson* is distinguishable.

In *Johnson*, the defendant called the police to report she had shot and killed her husband. *Id*. at 441. Police officers arrived at the defendant's and victim's home, handcuffed the defendant, and placed her in the back of a patrol car. *Id.* The husband's body was found inside the house and during the search complained of, the defendant was in the back of a police car and asked if the officers wanted her to go back in and show them where the couple was standing when the victim was shot. *Id.*

"[W]hen a homeowner makes a 911 call and requests immediate assistance because of an emergency, he is indicating his consent to (1) the arrival and entry of the responding officers to resolve that emergency, and (2) absent any evidence of the revocation of that consent, an objectively reasonable limited investigation by the responding officers into the emergency that the homeowner reported." *Id.* at 444. The Texas Court of Criminal Appeals held that because the defendant "was still at the scene as the officers continued to investigate and saw them going into her home, she was clearly in a position to revoke her consent had she wished to do so." *Id.* at 445. The court rejected the defendant's claim that police, having responded to her 911 call, should have left her deceased husband on the floor and obtained a search warrant. *Id*.

Tollefson argues because Barbara's body was found outside his trailer, rather than inside as in *Johnson*, officers did not have consent to enter his trailer. Tollefson's argument is persuasive. After the initial protective sweep of the trailer, it was unnecessary for law enforcement officials to re-enter the trailer to investigate the shooting or remove Barbara's body. In comparison, the defendant in *Johnson* was still at the scene as officers continued to investigate and was, therefore, "in a position to revoke her consent had she wished to do so." *Johnson*, 226 S.W.3d at 445. Officers took Tollefson to the Wilson County jail before Chief Deputy Deagen searched the trailer, so Tollefson was not in a position to deny consent.

We hold the emergency exception to the warrant requirement does not apply because after the initial protective sweep of Tollefson's trailer, wherein the officers did not seize the evidence in question, officers did not have Tollefson's implied consent to search his trailer. At the time of the second search, Tollefson had been removed from the scene and Barbara's body was outside the trailer.

*The Automobile Exception*

The State next contends the automobile exception applies. Tollefson argues the automobile exception does not apply because his trailer was not readily mobile; it had to be hitched to a truck before it could be moved, and it was not hitched to a truck at the time of the search.

A warrantless search of an automobile is justified any time an officer possesses probable cause to believe the automobile contains evidence of a crime. *Powell v. State*, 898 S.W.2d 821, 827 (Tex. Crim. App. 1994). Under the automobile exception, there is a reduced expectation of privacy in an automobile because (1) it is readily mobile, and (2) it is subject to government regulation. *Carroll v. United States*, 267 U.S. 132, 153 (1925). Because of this ready mobility,

"it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Id*. at 153. In *California v. Carney*, the Supreme Court held that a motor home was subject to the automobile exception because it was readily mobile, and because it was present in a setting that indicated it was being used for transportation. 471 U.S. 386, 394 (1985).

Tollefson argues his trailer is different than the vehicle in *Carney*. Tollefson argues his trailer was not self-propelled and therefore, not readily mobile, and that his trailer was situated such that an observer would conclude it was being used as a residence, not a vehicle. The record establishes Tollefson's trailer was not hitched to another vehicle and that the utilities were still attached to it at the time of the search.

The State argues the trailer could be rendered mobile by simply hooking the trailer up to a truck and moving the two-by-fours. The State also points to testimony that places Tollefson's friend, Robert Wall, at the scene. The State argues police had an interest in searching the trailer immediately because Robert Wall could have taken it off the property.

Even though Tollefson's trailer was subject to government regulation, Act of June 17, 2011, 82nd Leg., R.S., ch. 1296, § 126, 2011 Tex. Sess. Law Serv. (West) (to be codified at TEX. TRANSP. CODE ANN. § 502.254), we hold his trailer was not readily mobile. Tollefson's trailer did not have an ignition switch, the only way it could become mobile would be to hitch it to another vehicle, and it was still attached to the utilities at the time of the search.

We further hold *Carney* does not apply because Tollefson's trailer was not readily mobile and was not present in a setting that indicated it was being used for transportation. *See Carney*, 471 U.S. at 394. Because Tollefson's trailer was not hitched to another vehicle and because the

utilities were still attached, the trailer was not in a setting that would indicate it was being used for transportation. Therefore, the automobile exception does not apply.

*Plain View*

The State argues because the evidence law enforcement officers seized was in plain view, the officers were justified in entering and searching the trailer.

Under the plain view doctrine, an item may be seized if three requirements are met. *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009). "First, law enforcement officials must lawfully be where the object can be plainly viewed. Second, the incriminating character of the object in plain view must be immediately apparent to the officials. And third, the officials must have the right to access the object." *Id.* The Texas Court of Criminal Appeals further explained that without exigent circumstances, plain view cannot justify a search and seizure unless law enforcement officials have a lawful right to access the object. *Id.* at 335.

In *Keehn*, the officers looked in the windows of a van parked in a couple's driveway. *Id.* at 332. A member of the drug task force noticed a propane tank with a discolored and modified valve. *Id.* He testified that in his training and experience, he believed the tank contained ammonia for the purposes of producing methamphetamine, so he entered the van and seized the tank. *Id.* Although the court upheld the search based on the automobile exception, the court stated: "The court of appeals therefore was mistaken in upholding the seizure of the tank under the plain view exception because Officer Spragins had no lawful right, absent some exception to the warrant requirement, to enter the van." *Id.* at 335. Because the automobile exception applied, Officer Spragins had a lawful right to enter the van. *Keehn*, 279 S.W.3d at 335-36.

Unlike the officer in *Keehn*, officers here did not have a lawful right to enter Tollefson's trailer because they did not have a warrant and none of the exceptions to the warrant requirement

were applicable. Because officers did not have a lawful right to enter the trailer, the seizure of the evidence cannot be justified under the plain view exception.

The three exceptions to the warrant requirement as argued by the State: responding to an emergency call; the automobile exception; and plain view do not apply. We therefore hold the warrantless search was invalid.

*Harmless Error*

The State argues that even if we find the search invalid, the admission of the illegally obtained evidence was harmless error. Tollefson, however, contends the evidence, especially the handwritten note documenting his grievances against the Coulls, materially impacted the verdict, specifically his claim of self-defense. Because the search was invalid, we must now conduct a harm analysis.

Erroneous admission of evidence seized in violation of the Fourth Amendment is considered constitutional error. *Hernandez v. State*, 60 S.W.3d 106, 106 (Tex. Crim. App. 2001). When analyzing constitutional error, rule 44.2 of Texas Rules of Appellate Procedure applies. *See id*; TEX. R. APP. P. 44.2(a). Under this standard, we must reverse the trial court's judgment unless we determine beyond a reasonable doubt that the error did not contribute to Tollefson's conviction or punishment. TEX. R. APP. P. 44.2(a).

A constitutional error does not contribute to the conviction or punishment if the jury's verdict would have been the same even if the erroneous evidence had not been admitted. *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007). In making this determination, we may consider: (1) the importance of the erroneous evidence to the State's case; (2) whether the evidence was cumulative of other evidence; (3) the presence or absence of other evidence corroborating or contradicting the erroneous evidence on material points; and (4) the overall

strength of the State's case. *See id.* We may also consider whether, or to what extent, the State emphasized the error. *See Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989). We begin by reviewing the record to determine how the State used the erroneous evidence against Tollefson.

When the erroneous evidence was admitted, the State claimed the evidence went to motive, intent, accident, or mistake, and was an admission by Tollefson of his then existing mental or emotional state. This was the State's only reference to the seized evidence. Tollefson was not asked about the evidence on cross-examination nor was the evidence referenced by the State in its closing arguments. Clearly, the erroneously seized evidence did not play a role in the State's case.

Moreover, the seized note, which is the crux of Tollefson's complaint, was fairly cumulative of other evidence and corroborated by David Coull, Barbara's husband, and Tollefson himself. The note documented five different complaints about the Coulls. These complaints were that: (1) he called the Sheriff's Office concerning Casey and Cody Coull; (2) he saw Casey and Cody on four-wheelers pointing rifles at him; (3) Casey tried to hit his dog with a four-wheeler; (4) Barbara was riding a four-wheeler at his trailer at a high speed; and (5) the tires on his trailer were different, the steel belts were showing, and his spare was flat. Essentially, the note evidenced problems between Tollefson and the Coulls.

David testified about the problems between Barbara and Tollefson. David stated that at least once Barbara yelled at Tollefson because his dog was chasing the Coulls' calves. David testified that on one occasion, Tollefson "started in on" Barbara and then turned to David and told David he was "tired of [David's] crap." Along with David's testimony, Tollefson also testified that his and Barbara's relationship became problematic because she repeatedly asked

him for a loan even though the Coulls were in bankruptcy. Thus, both David's and Tollefson's testimony, like the note, evidenced a troubled relationship between Tollefson and the Coulls, especially Barbara.

Because the State did not use the improperly seized evidence during cross-examination of Tollefson or during closing arguments to rebut his assertion of self-defense, the evidence was not of much importance to the State's case. And, the evidence from the note regarding the trouble between Tollefson and the Coulls was fairly cumulative of David's and Tollefson's testimony.

As for the overall strength of the State's case, we hold it was very strong without the illegally seized items. Forensic evidence established Tollefson was only six to nine inches from Barbara when he shot her, contrary to Tollefson's assertion that he was five to six feet away. There was also evidence Barbara was shot three times, even though Tollefson claimed he only shot her once. Tollefson even reiterates, in his brief to this court, that the "State's mantra" at trial was that "the physical evidence does not lie," essentially agreeing the strength of the State's case was based on forensic evidence, not the items seized from the trailer. Therefore, we hold Tollefson was not harmed by the erroneous admission of the illegally seized evidence. *See Hamilton v. State*, 300 S.W.3d 14, 22 (Tex. App.—San Antonio 2009, pet. ref'd) (holding that even though admission of evidence was constitutional error, error was harmless because importance of evidence in State's case was "moderate," evidence was cumulative and corroborated by other evidence, and State's case was otherwise strong without erroneous evidence).

## ISSUE 2: CONFRONTATION CLAUSE

In his second issue, Tollefson contends the trial court erred in admitting expert opinion testimony from a trace-evidence analyst regarding the distance between Tollefson's weapon and

Barbara when the weapon was fired. Tollefson argues that because the testimony was based on test-firing conducted by a ballistics analyst who was not present at trial, Tollefson's Sixth Amendment right to confront witnesses against him was violated.

The Sixth Amendment's Confrontation Clause provides that all criminal defendants have the right to confront any witnesses against him. U.S. CONST. amend. VI. In *Crawford v. Washington*, the United States Supreme Court held that testimonial hearsay statements of witnesses absent from trial are admissible over a Confrontation Clause objection only when the declarant has shown to be unavailable and where the defendant has had a prior opportunity to cross-examine the declarant. 541 U.S. 36, 57-60 (2004). In *Melendez-Diaz v. Massachusetts*, the Court held a forensic analyst's report created for criminal prosecution is testimonial in nature, and therefore subject to the Confrontation Clause. 129 S.Ct. 2527, 2540 (2009).

More recently, the Court addressed the issue of "surrogate testimony" with respect to forensic reports in *Bullcoming v. New Mexico*. 131 S.Ct. 2705 (2011). In *Bullcoming*, a DUI case, the forensic analyst assigned to test Bullcoming's blood sample created and signed the "Report of Blood Alcohol Analysis." *Id.* at 2710. But at trial, the State called a different analyst, who was familiar with the laboratory's testing procedure, but neither participated in, nor observed, the testing of Bullcoming's blood sample. *Id.* at 2709. The Court held the admission of the forensic analyst's report concerning Bullcoming's blood alcohol concentration violated his right to confrontation because a surrogate analyst, rather than the analyst who prepared the report, testified from the report. *Id.* at 2715-16. *Bullcoming* is distinguishable.

Here, Crystina Vachon testified she conducted a test to determine how far the gun was from Barbara's clothing when it was fired. After testing, Vachon testified she determined Tollefson's weapon was six to nine inches from Barbara when it was fired. The ballistics expert,

David Pendelton, who test fired the weapon did not testify at trial. Vachon testified that although she did not fire the weapon, she was present when Pendelton did. Not only was Vachon present when Pendelton test fired the weapon, Vachon was the one who analyzed the findings and prepared the report on those findings. Pendelton merely fired the weapon at Vachon's request.

We hold Tollefson's Sixth Amendment rights were not violated. Although Pendelton test fired the weapon, Vachon was the analyst who created the report, she was present when Pendelton fired the weapon, and she testified at trial. In *Bullcoming*, the analyst who testified at trial did not prepare the report; a different analyst did. The Court explained that "the analysts who write the reports that the prosecution introduces must be made available for confrontation . . . ." *Bullcoming*, 129 S.Ct. at 2715. Moreover, Pendelton did not make a testimonial statement because he did not create the report. Vachon made the testimonial statement and because she testified and was available for cross-examination, we hold the Confrontation Clause was not violated. Therefore, Tollefson's second issue is overruled.

## CONCLUSION

We overrule Tollefson's two issues. Accordingly, the judgment of the trial court is affirmed.

Marialyn Barnard, Justice

Publish