# NO. 12-14-00050-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *KENNETH WAYNE LASYONE,* *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Kenneth Wayne Lasyone appeals his conviction for misdemeanor possession of marijuana. He raises two issues on appeal relating to the trial court's ruling on his motion to suppress. We reverse and remand.

## BACKGROUND

Appellant was charged by information with the misdemeanor offense of possession of marijuana in an amount of two ounces or less. He filed a motion to suppress, alleging violations of the U.S. Constitution, Texas Constitution, and Texas Code of Criminal Procedure. The trial court conducted a hearing on Appellant's motion, during which was heard testimony from Appellant, the arresting officer, and two women who were at Appellant's home during the search. The trial court denied Appellant's motion to suppress. Appellant pleaded guilty to the offense, but reserved his right to appeal the trial court's denial of his motion to suppress.[1] This appeal followed.

---

[1] The trial court did not sign an order denying Appellant's motion to suppress. However, Appellant's complaint is preserved for appeal because Rule 33.1 of the Texas Rules of Appellate Procedure requires that the record show the trial court's ruling on the motion "either expressly or implicitly." TEX. R. APP. P. 33.1(a). A trial court's ruling need not be expressly stated if its actions or other statements unquestionably indicate a ruling. *Dahlem v. State*, 322 S.W.3d 685, 691 (Tex. App.—Fort Worth 2010, pet. ref'd) (citation omitted); *see also Montanez v. State*, 195 S.W.3d 101, 104 (Tex. Crim. App. 2006). Here, the clerk's record includes Appellant's motion to suppress, a docket entry stating that Appellant's motion to suppress is "denied," and the trial court's certification of appeal stating that "matters were raised by written motion filed and ruled on before trial and not withdrawn or waived."

In his first and second issues, Appellant contends that the trial court erred by denying his motion to suppress because the plain view doctrine and exigent circumstances exception did not justify the warrantless search of his home. Neither party requested findings of fact or conclusions of law from the trial court.

## Standard of Review

Appellate review of a trial court's ruling on a motion to suppress involves a bifurcated analysis. *Delafuente v. State*, 414 S.W.3d 173, 177 (Tex. Crim. App. 2013). We give almost total deference to a trial court's findings of historical fact and credibility determinations that are supported by the record, but review questions of law de novo. *Id.*

When the trial court fails to file findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (en banc); *see also Aguirre v. State*, 402 S.W.3d 664, 666-67 (Tex. Crim. App. 2013) (Cochran, J., concurring in refusal of petition for discretionary review). We will uphold the trial court's ruling if it is correct under any theory of law applicable to the case. *Elizondo v. State*, 382 S.W.3d 389, 393-94 (Tex. Crim. App. 2012).

## Applicable Law

A warrantless entry or search is presumptively unreasonable under the Fourth and Fourteenth Amendments. *See Rayford v. State*, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003) (citations omitted). But under certain circumstances, this presumption may be overcome because "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Kentucky v. King*, 131 S. Ct. 1849, 1856, 179 L. Ed. 2d 865 (2011) (citations omitted). Whether the reasonableness requirement is satisfied in this case depends on the applicability of the plain view and exigent circumstances exceptions to the warrant requirement.

### *Plain View Doctrine*

A police officer's entry into a residence is a "search" for purposes of the Fourth Amendment. *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010). In order to seize an object in plain view, three requirements must be met. *State v. Betts*, 397 S.W.3d 198, 206 (Tex. Crim. App. 2013) (citing *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009)).

2

> First, law enforcement officials must be where the object can be "plainly viewed." Second, the "incriminating character" of the object in plain view must be "immediately apparent" to the officials. And third, the officials must have the right to access the object.

*Id.* at 334. Plain view, in the absence of exigent circumstances, can never justify a search and seizure without a warrant when law enforcement officials have no lawful right to access an object. *Id.* at 335.

### Exigent Circumstances

The warrantless search or entry of a home may be justified by exigent circumstances. *See King*, 131 S. Ct. at 1856. When a defendant moves to suppress evidence based on a warrantless search, the state has the burden of showing that probable cause existed at the time the search was made and that exigent circumstances requiring immediate entry made obtaining a warrant impracticable. *Turrubiate v. State*, 399 S.W.3d 147, 151 (Tex. Crim. App. 2013) (citations omitted). If probable cause exists, exigent circumstances may require immediate, warrantless entry by officers who are (1) providing aid to persons whom law enforcement reasonably believes are in need of it; (2) protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; or (3) preventing the destruction of evidence or contraband. *Id.*

The need to prevent the imminent destruction of evidence has long been recognized as a sufficient justification for a warrantless search. *King*, 131 S. Ct. at 1856. However, "the mere possibility that evidence may be destroyed does not rise to a finding of exigent circumstances." *Turrubiate*, 399 S.W.3d at 153 n.4 (citing *United States v. Menchaca-Castruita*, 587 F.3d 283, 295-96 (5th Cir. 2009) (A finding of exigent circumstances "must be based on an officer's reasonable belief that the delay necessary to obtain a warrant will facilitate the destruction or removal of evidence. . . .")). There is no "presumed exigency that someone in possession of contraband will destroy it when he knows a police officer is on his trail." *Turrubiate*, 399 S.W.3d at 153. In determining whether exigent circumstances exist, the court considers whether there is proof that the officer reasonably believed removal or destruction of evidence was imminent. *Id*. The record must show proof of imminent destruction based on affirmative conduct by those in possession of narcotics in a particular case; the reviewing court "should not presume . . . that destruction of evidence was imminent" when an occupant possessed contraband and an officer with probable cause knocked and announced himself. *Id.* at 153-54.

**Discussion**

Appellant testified during the hearing on his motion to suppress, and also elicited testimony from the arresting officer, Brett Ayres, and two individuals who were present in his home when Officer Ayres arrived. It is undisputed that Appellant did not consent to Officer Ayres's entering his home. Thus, Officer Ayres's entry and ultimate seizure of marijuana found inside Appellant's home must be justified by some other exception to the Fourth Amendment in order for his search and seizure to be "reasonable." *See King*, 131 S. Ct. at 1856.

On the night of December 8, 2012, Officer Ayres received a parking complaint from one of Appellant's neighbors. The complainant indicated that the owner of the vehicle was inside Appellant's home. As a result, Officer Ayres walked to Appellant's home and knocked on Appellant's door to advise him of the complaint.

Appellant testified that when he answered the door, he opened it only as far as the chain lock would allow. The only time the door was opened wider was when a guest exited to move his vehicle, as Officer Ayres requested. Appellant testified that as he spoke with Officer Ayres, the door was opened only a "small amount," and that once his guest exited, Appellant continued to restrict the opening of the door to "about four inches." Appellant explained that, because there was a "foyer" at the entrance, "[y]ou can't see anything but the glass of the back door" until "you come around the wall and get into the home."

Officer Ayres testified that when he knocked on Appellant's door, he heard "footsteps running up the stairs." Ayres testified that, having been an officer for eleven years, hearing the footsteps when viewed in light of the fact that it took approximately one minute for Appellant to answer the door "starts putting up flags." According to Ayres, Appellant opened the door "wide-open," and "a lot of smoke . . . started coming out [of] the door." Ayres noticed the odor of "burnt marijuana," and testified that as he stood at the threshold of the door, he saw a green leafy substance on the coffee table inside Appellant's living room. Ayres said he told Appellant

> I was going to go in and collect the evidence to keep anybody from destroying it. I asked the defendant to move out of the way, and told him what my intentions were.
>
> And he said he was not going to move out of the way, and that I needed to get a warrant.

Ayres confirmed that Appellant failed to "get out of the way of the door." Thus, he "placed [Appellant] under arrest" and "collected the evidence" after handcuffing Appellant.

In viewing the evidence in the light most favorable to the trial court's ruling, we can conclude the trial court believed that Officer Ayres smelled burnt marijuana and that, while the officer was standing at the threshold of Appellant's door, he saw a green leafy substance that was consistent with the appearance of marijuana on Appellant's coffee table. *See Ross*, 32 S.W.3d at 855. However, the fact that the incriminating character of the substance was immediately apparent when Officer Ayres plainly viewed it does not render his search and seizure reasonable under the Fourth Amendment. *See Betts*, 397 S.W.3d at 206; *Keehn*, 279 S.W.3d at 334-35; *see also Tollefson v. State*, 352 S.W.3d 816, 821 (Tex. App.—San Antonio 2011, pet. ref'd) (officers did not have lawful right to enter travel trailer even though evidence seized was in plain view).

Officer Ayres was required to have lawful access to seize the evidence; plain view alone does not justify his warrantless entry. *See Betts*, 397 S.W.3d at 206-07 ("[T]he fact that officers could see the dogs from afar does not mean that they were entitled to go onto the property and seize the dogs without a warrant, at least in the absence of some other exigency."). Officer Ayres's testimony that he was going to "collect the evidence to keep anybody from destroying it" suggests that he believed warrantless entry was permissible under the exigent circumstances exception. *See Turrubiate*, 399 S.W.3d at 151. But in order for the exigent circumstances exception to apply, there must be proof that Officer Ayres reasonably believed that the removal or destruction of evidence was imminent, making the attainment of a warrant impractical. *Id.* at 151, 153.

The facts that purportedly establish exigent circumstances in this case are the sound of footsteps running up the stairs, Appellant's one minute delay in answering the door, and the smell of burnt marijuana upon the opening of the door. Officer Ayres did not testify that he heard anything prior to Appellant's answering the door that he associated with the destruction or imminent destruction of drug-related evidence, e.g., no sounds of a toilet flushing or a shower or faucet running. *See id.* at 155 (discussing *U.S. v. Ramirez*, 676 F.3d 755, 762 (8th Cir. 2012)). Furthermore, the evidence does not show whether the "footsteps running up the stairs" were heard after Ayres identified himself as "Nacogdoches Police Department." If Ayers heard the footsteps after he identified himself, the evidence would support an inference that occupants in the house were hiding from law enforcement, but such evidence still does not show that destruction of drug-related evidence was imminent.[2] Finally, Officer Ayers confirmed that prior to his entry, backup

---

[2] Testimony from two individuals who were at Appellant's home testified that they stayed in the downstairs bathroom while Ayres was at the home. But this evidence is immaterial regarding whether destruction of the marijuana seen on Appellant's coffee table was imminent.

was on its way and the backup officer could have secured the scene while he obtained a search warrant.[3]

## Conclusion

Officer Ayres had probable cause to believe criminal activity was afoot once Appellant answered the door—he detected the smell of burnt marijuana and saw marijuana on Appellant's coffee table from the threshold of Appellant's door. But the officer's belief that evidence was about to be destroyed is not supported by the record; thus, the evidence is insufficient to support a finding of exigent circumstances in this case. *See Turrubiate*, 399 S.W.3d at 154 ("We require some evidence of exigency beyond mere knowledge of police presence and an odor of illegal narcotics."). Absent exigent circumstances, Officer Ayres had no lawful right to access the marijuana in plain view inside Appellant's home. *See Betts*, 397 S.W.3d at 207; *Keehn*, 279 S.W.3d at 334-35. The trial court erred in denying Appellant's motion to suppress. Accordingly, we sustain Appellant's first and second issues.

### DISPOSITION

Having sustained Appellant's first and second issues, we *reverse* the trial court's judgment and *remand* the cause for further proceedings. *See* TEX. R. APP. P. 43.2(d).

**SAM GRIFFITH**
Justice

Opinion delivered July 23, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

---

[3] Ayres had testified that when he was at the doorway, he could smell the marijuana, "but I knew I had backup coming. I wasn't going to go ahead and start a confrontation about [the marijuana] right then." Ayres's testimony regarding his ability to get a warrant is illustrated by the following dialogue between him and the defense attorney:

> Defense Attorney: But you had backup on the way? You had already called in for backup. So could that officer have secured the scene and waited for you to go get a warrant?
>
> Ayres: Yes, he could have.
>
> Defense Attorney: So you could have gotten a warrant if you chose to?
>
> Ayres: Yes, I could have.

6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JULY 23, 2014

NO. 12-14-00050-CR

**KENNETH WAYNE LASYONE,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the County Court at Law

of Nacogdoches County, Texas (Tr.Ct.No. CF 1300267)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment be **reversed** and the cause **remanded** to the trial court **for further proceedings**; and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*