

# NUMBER 13-20-00459-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JUSTIN MICHAEL FROST,                                                  Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

On appeal from the 13th District Court
of Navarro County, Texas.

# MEMORANDUM OPINION

### Before Justices Longoria, Hinojosa, and Tijerina
### Memorandum Opinion by Justice Tijerina

Appellant Justin Michael Frost appeals the trial court's denial of his motion to suppress evidence from a warrantless search. Frost was charged with possession of a controlled substance under one gram. TEX. HEALTH & SAFETY CODE ANN. § 481.115(a)–(b). By what we construe as two issues, Frost argues that the trial court erred in denying his motion to suppress because the officer violated his Fourth Amendment rights when

he (1) entered his residence without a warrant and (2) searched his backpack without consent. We affirm.[1]

## I.  BACKGROUND

The State charged Frost with possession of a controlled substance under one gram. *Id.* at § 481.115(a)–(b). Frost filed a motion to suppress. The trial court held a hearing where Officer Michael Worthy testified, and the trial court reviewed the body camera footage.

On March 4, 2020, the Corsicana Police Department received an anonymous narcotics complaint about possible drug dealing in a small shed located at the end of a driveway on W. Sycamore Avenue where Frost and Bradley Bailey resided. The Department dispatched Officer Worthy and another officer to investigate. The body camera footage shows Officer Worthy arriving and walking up a driveway toward the shed. On the left side of the shed, there is a phone number displayed on a tarp. After looking at the phone number, Officer Worthy knocks twice on the door of the shed. After a pause, Bailey answers. The doorway consists of the main door plus an outer glass screen door. Officer Worthy holds the screen door open, while Bailey opens the main door. Bailey opens the main door completely, allowing Officer Worthy to see inside the shed. Bailey's torso blocks the body camera's view, but Officer Worthy testified that he observed marijuana and other paraphernalia on a coffee table located in the middle of the shed. Officer Worthy testified that after he saw the contraband on the table, Bailey

---

[1] This appeal was transferred to this Court from the Tenth Court of Appeals in Waco by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts); 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

attempted to close the door before Officer Worthy could see into the shed. The body camera footage shows Bailey grabbing the doorknob and Officer Worthy saying, "Hold on, leave the door open for me." In his brief, Frost insists that Officer Worthy "moves Bailey to the side and barges his way into the dwelling." However, the video shows Bailey moving voluntarily out of the doorway without any verbal order or force and then Officer Worthy stepping inside. Officer Worthy then informs Frost, Bailey, and other occupants of the shed that he is there in response to a narcotics complaint and that he can see drugs and paraphernalia on the table.

The shed consists of two sections, divided by tarps suspended from the ceiling. One section belonged to Bailey, and the other to Frost. The body camera footage shows Officer Worthy asking Bailey and Frost for consent to search. Officer Worthy explains that if they do not consent, he would get a search warrant. Bailey provides consent. After searching Bailey's area, Officer Worthy asks Frost for consent to search Frost's area of the shed. Officer Worthy again tells Frost that they could get a search warrant, if necessary, but that it would be easier if Frost consents. Frost did not respond with a yes or no answer, but he eventually points to a backpack and admits that he has "bud" and other paraphernalia stored inside of it. Officer Worthy asks Frost for consent to search the backpack. Frost responds by offering to get the drugs and paraphernalia out of the bag. Officer Worthy declines the offer, walks over to the bag himself, opens it, and finds the contraband.

The trial court denied the motion without any findings of fact or conclusions of law. Frost pleaded guilty. The trial court deferred the finding of guilt and placed Frost on

community supervision for two years. This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

The Fourth Amendment to the United States Constitution and article I, § 9 of the Texas Constitution protect against unreasonable searches and seizures. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. A defendant who files a motion to suppress challenging the admissibility of evidence under the Fourth Amendment bears the burden of producing evidence that rebuts the presumption of proper police conduct. *White v. State*, 549 S.W.3d 146, 155 (Tex. Crim. App. 2018). This burden is met when it is established that a search occurred without a warrant. *Id.* The burden then shifts to the State to prove that the search and seizure was nonetheless reasonable under the totality of the circumstances. *Id.*

When reviewing a trial court's ruling on a motion to suppress evidence, we apply a bifurcated standard of review. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). On the one hand, we give "almost total deference to a trial court's determination of the historical facts." *Id.* When a trial court's ruling turns on the credibility of witnesses, we give almost total deference to a trial court's determination because of the trial court's fact-finding role. *Id.* On the other hand, we review de novo the court's application of the law of search and seizure. *Id.* We review de novo mixed questions of law and fact that do not turn on the credibility and demeanor of witnesses. *Id.* When the trial court makes no explicit findings of facts, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). The law requires that

we sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Valtierra v. State*, 310 S.W.3d 442, 447–48 (Tex. Crim. App. 2010).

### III.    ENTRY INTO THE RESIDENCE

By his first issue, Frost contends that the trial court should have granted his motion to suppress because Officer Worthy entered his residence without a warrant.

### A.    Applicable Law

Generally, officers cannot enter homes without a warrant. *See Turrubiate v. State,* 399 S.W.3d 147, 156 (Tex. Crim. App. 2013) ("A police officer who enters a home without a warrant merely because he had probable cause to believe contraband was in that home . . . violates the Fourth Amendment."). However, an object which is "knowingly exposed to the public, even in [one's] own home, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967). Objects exposed to the public, i.e., ones in "plain view," may be searched or seized by an officer if three elements are satisfied: (1) the officer views the object from a lawful vantage point, (2) the incriminating character of the object is immediately apparent, and (3) the officer has the right to access the object. *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009). An officer has the right to access an object in a home if there is an exigent circumstance. *Id.* The relevant exigent circumstance in this case is the possible destruction of evidence. *State v. Villarreal*, 476 S.W.3d 45, 50 (Tex. App.—Corpus Christi–Edinburg 2014), *aff'd*, 475 S.W.3d 784 (Tex. Crim. App. 2014).

**B.      Analysis**

Frost argues that Officer Worthy had no legal right to enter the residence because there were no exigent circumstances to conduct a warrantless search.[2] Frost argues that no exigency existed because nobody made any "furtive" movements or attempted to tamper with or destroy the contraband.[3]

"A reviewing court should not presume . . . that a showing that an occupant possessed contraband and that an officer with probable cause knocked and announced himself also shows that destruction of evidence was imminent." *Turrubiate*, 399 S.W.3d at 154. The relevant test is "whether the officer reasonably believed that the removal or destruction of evidence was imminent." *Id.* at 153. That belief must be "based on affirmative conduct by those in possession of [the] narcotics." *Id.* In *Turrubiate*, a police officer approached a house after the Department of Family and Protective Services suspected the occupants were smoking marijuana near children.[4] *Id.* at 149. An occupant cracked the door open slightly and spoke with the officer. *Id.* Through the crack, the officer could smell a strong odor of marijuana. *Id.* The officer forcibly entered and seized the drugs. *Id.* The State tried to justify the warrantless entry by arguing that, "these circumstances, alone, gave the officer reason to believe that appellant would attempt to destroy the marijuana absent immediate intervention." *Id.* at 153. The court disagreed,

---

[2] Frost does not explicitly address the "plain view" doctrine nor its first two elements.

[3] "A furtive movement (or gesture) is a surreptitious movement, especially, one seeming to be hiding something, seen by a police officer and providing reasonable suspicion to detain or search." BLACK'S LAW DICTIONARY (11th ed. 2019).

[4] The did not address exigency based on a risk to the child. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013).

concluding that no evidence showed that anyone intended to destroy the marijuana. *Id.* at 155. The court noted that, "Appellant voluntarily answered the door [when the Deputy] knocked and did not engage in any conduct suggesting that he intended to destroy evidence, such as making furtive movements after seeing Deputy Chavarria at the door." *Id.* at 154.

The State argues that the mere possibility that evidence may be destroyed alone creates an exigent circumstance. Relying on *Ross v. State*, it contends that some "situations inherently merit intervention to avoid destruction of evidence." *See* No. 14-02-00413-CR, 2003 WL 1987848, at *2–3 (Tex. App.—Houston [14th Dist.] May 1, 2003, no pet.) (mem. op. not designated for publication). Specifically, the State argues:

> It was reasonable for Officer Worthy to conclude that if he did not act to seize the contraband he observed, that contraband was likely to be concealed or destroyed, particularly in light of the extended period it took for the residents to respond to his knock on the door, just a few minutes before.

Some authorities support the State's conclusion. For example, the Court of Criminal Appeals stated in *Rodriguez v. State* that an arrest warrant was not necessary when an officer, standing in an open doorway, could see drugs displayed on a visible table:

> [A]ppellant contends the officers had no right to enter the apartment to investigate reported possession of marihuana. This contention is untenable . . . Nothing in our Constitutions prevents a police officer from addressing questions to citizens on the street; it follows that nothing would prevent him from knocking politely on any closed door. Further, nothing in the statutes or governing constitutional provisions requires any citizen to respond to a knock on his door by opening it. Indeed, the very act of opening the door exhibits an intentional relinquishment of any subjective expectation of privacy, particularly when illegal activity may be readily detected by smell and sight by anyone standing at the doorway . . . since Detective Rusk

7

> readily observed appellants' commission of an offense "within his view," their warrantless arrests were lawful.

653 S.W.2d 305, 307 (Tex. Crim. App. 1983) (quoting TEX. CODE CRIM. PROC. ANN. arts. 14.01; 14.05, which allow officers to make arrests for offenses committed within view); *see also Beaver v. State*, 106 S.W.3d 243, 249 (Tex. App.—Houston [1st Dist.], 2003, no pet.) (holding that a burning marijuana cigarette on the coffee table and water pipe on top of the refrigerator, both of which were in plain view from the doorway, could be seized upon initial entry to prevent the destruction of evidence); *Aguilar v. State*, No. 05-07-00660-CR, 2008 WL 3823992, at *6 (Tex. App.—Dallas Aug. 18, 2008, pet. ref'd) (mem. op. not designated for publication) (holding that officers were allowed to seize drug paraphernalia placed on top of a three-foot tall refrigerator plainly visible from the front door upon initial entry).

However, the State's contention that a situation may "inherently merit intervention" seems to contradict *Turrubiate* and other more recent authorities, which require affirmative conduct. *See e.g.*, *State v. Betts*, 397 S.W.3d 198, 207 (Tex. Crim. App. 2013) (holding that, because no other exigency existed, officers could not enter a fenced backyard without a warrant even though they could see abused and malnourished pets in plain view); *Keehn*, 279 S.W.3d at 34 (holding that the State could not rely on the plain view doctrine to enter a car without a warrant where drug manufacturing materials were visible but no other exigency existed); *Tollefson v. State*, 352 S.W.3d 816, 821 (Tex. App.—San Antonio 2011, pet. ref'd) (holding that officers could not enter a trailer without a warrant even though murder-related evidence was in plain view from the propped open trailer door because appellant already surrendered); *see also Lasyone v. State*, No. 12-

14-00050-CR, 2014 WL 3662567, at *3–4 (Tex. App.—Tyler July 23, 2014, not pet.) (mem. op., not designated for publication) (holding that officer did not have lawful right to enter a home without a warrant even though marijuana and fumes were visible when suspect made no furtive movements except telling the officer to go get a warrant). Thus, for purposes of our analysis, we will assume without deciding that the law requires evidence of a furtive movement or affirmative conduct giving Officer Worthy a reasonable belief that occupants of the shed would destroy or tamper with the drugs.

From the record, the trial court may have reasonably determined that Officer Worthy viewed the drugs from a lawful vantage point because he immediately viewed the drugs on the table right after Bailey opened the door. *Cornealius v. State*, 900 S.W.2d 731, 733 (Tex. Crim. App. 1995) (holding that officers are permitted to approach doors and knock). The trial court may have reasonably inferred the incriminating character of the drugs was immediately apparent because Officer Worthy required no further investigation to determine that the drugs on the table were indeed drugs, and Frost does not challenge this finding. *State v. Dobbs*, 323 S.W.3d 184, 187 (Tex. Crim. App. 2010) (holding that officers could not seize stolen golf clubs in the plain view because the officers needed "further investigation" to determine the incriminating character of the golf clubs). Therefore, we defer to the trial court's findings as to the first two elements. *See Valtierra*, 310 S.W.3d at 447–48 ("[Appellate courts] will sustain the trial court's ruling if that ruling is reasonably supported by the record and is correct on any theory of law applicable to the case.").

The trial court could have reasonably believed an exigency existed because Bailey attempted to shut the door once Officer Worthy saw the drugs. Frost asserts that no evidence shows that anyone made a furtive movement. Frost also cites Officer Worthy's testimony:

[Defense Counsel]: And at that point why were you entering the residence?

[Officer Worthy]: Because while at the doorway I could see narcotics inside.

[Defense Counsel]: Okay. And that's the only reason?

[Officer Worthy]: That's enough reason to secure a scene, yes.

[Defense Counsel]: Okay. And that's what you were doing. You were securing the scene; correct?

[Officer Worthy]: Yes. You go in to secure the scene to make sure nobody's going to destroy or tamper with any of the evidence.

[Defense Counsel]: Okay. But did anybody try to tamper or destroy evidence?

[Officer Worthy]: In that particular call throughout the entirety, no, or at least not that I observed.

However, when viewed in a light most favorable to the trial court's ruling, Bailey's attempt to close the door after seeing Officer Worthy was a movement the trial court could reasonably interpret as furtive. *Carmouche*, 10 S.W.3d at 328. Although the body camera footage is grainy and obscured by rainwater, the video shows Bailey reaching for the doorknob again in an attempt to close it. Officer Worthy then says, "Hold on, leave the door open for me." By grabbing the doorknob and starting to close the door, the trial court could have perceived that Bailey was attempting to isolate Officer Worthy, giving the other

10

occupants the opportunity to destroy or hide the drugs. *See Gutierrez v. State*, 221 S.W.3d 680, 686–87 (Tex. Crim. App. 2007) (holding that officers were allowed to enter the house to preserve status quo by preventing an uncooperative suspect from moving out of the officers' view and potentially destroying evidence, even if a further search of the house required a warrant); *see also Ross*, 2003 WL 1987848 at *3 (holding that officers could enter a motel room and seize drugs that appellant threw back on the floor upon answering the door). Because the trial court could have interpreted the attempt to close the door as a furtive movement and the record supports this conclusion, we find the trial court did not abuse its discretion when it determined that the plain view doctrine applied. Therefore, the initial entry was lawful. *See Valtierra*, 310 S.W.3d at 447–48. We overrule Frost's first issue.

### IV. SEARCH OF THE BACKPACK

By his second issue, Frost argues that he did not consent to a search of the backpack. The State counters that the trial court have reasonably found that Frost gave consent to search:

> In the present case, the initial words uttered by [Frost] gave rise to implied consent for Officer Worthy to initiate the search. [Frost] advised that he had "bud" in a backpack situated behind Officer Worthy. Officer Worthy asked for permission to look in the backpack and [Frost], without saying yes or no, offered to get it for him. In that situation and considering the verbal exchange between Officer Worthy and [Frost], a reasonable person would have understood that [Frost] was willing to let Officer Worthy search the backpack.

We agree with the State. Voluntary consent is an exception to the general rule requiring warrants for searches in residences. *Valtierra,* 310 S.W.3d at 448. A person may give consent orally or by action. *Id.* "[T]he standard for measuring the scope of

11

consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). The validity of alleged consent is a question of fact based on the totality of the circumstances. *Id.* The State must establish that the appellant consented by clear and convincing evidence. *Id.*

The trial court could have reasonably concluded that Frost consented because a reasonable person could interpret Frost's offer to get the drugs out of his backpack as consent to search the bag for the drugs. Officer Worthy interpreted this offer as consent:

| [Prosecutor]: | So you asked for consent and he pointed out where the bag was located and told you what was in it; is that correct? |
|---|---|
| [Officer Worthy]: | That's correct. |
| [Prosecutor]: | Okay. And tell me again what did he indicate was inside the bag? |
| [Officer Worthy]: | Marijuana and paraphernalia. |
| [Prosecutor]: | Okay. Did he give you consent to search the bag? |
| [Officer Worthy]: | He offered to retrieve the bag for me. |
| [Prosecutor]: | Okay. And did you allow him to do that? |
| [Officer Worthy]: | No. |
| [Prosecutor]: | Okay. And why not? |
| [Officer Worthy]: | Due to having a possible weapon in the backpack. |

A reasonable person could infer consent to search the bag from this exchange because Frost pointed the bag out, admitted there were drugs inside of it, and then offered to give the drugs to Officer Worthy.

12

Officer Worthy was not required to wait for Frost to explicitly say "Yes." Less direct statements and actions have been held to imply consent. *See e.g.*, *id.* at 449 n.32 (holding that "a search may be lawful even if the person giving consent does not recite the talismanic phrase: 'You have my permission to search.'"); *Meekins v. State,* 340 S.W.3d 454, 461 (Tex. Crim. App. 2011) (holding that a trial court could find consent when suspect said "I guess"); *see also Valdez v. State*, No. 05-15-00907-CR, 2016 WL 1253523, at *2 (Tex. App.—Dallas Mar. 30, 2016 pet. ref'd) (mem. op., not designated for publication) (holding that a trial court could find consent when a suspect gave an ambiguous oral response but had favorable body language). Although less direct than explicitly saying "yes," a reasonable person could interpret the exchange between Frost and Officer Worthy as giving consent. Thus, the trial court could have reasonably concluded that the search was consensual and that the search of the backpack was lawful. *Valtierra*, 310 S.W.3d at 447–48. We overrule Frost's second issue.

## V. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
8th day of July, 2021.

13