# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00203-CR

**Candace Orn, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF CALDWELL COUNTY, 421ST JUDICIAL DISTRICT
NO. 12-095, HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

After the trial court denied her motion to suppress, appellant Candace Orn pleaded guilty to the state-jail-felony offense of possession of less than one gram of methamphetamine. *See* Tex. Health & Safety Code §§ 481.102(6), .115(b). Pursuant to appellant's agreement with the State, the trial court deferred adjudication of guilt, placed appellant on community supervision for two years, and assessed a $1,000 fine. In one issue on appeal, appellant contends the trial court abused its discretion in denying appellant's motion to suppress because there was no probable cause for the warrantless search of appellant's vehicle, the State did not prove that the arresting officer conducted a valid inventory according to departmental procedures, and the search did not meet the requirements of a valid search incident to arrest under *Arizona v. Gant*, 556 U.S. 332 (2009). We will affirm.

## BACKGROUND

The following is a summary of testimony and evidence presented at the hearing on the motion to suppress. At approximately 3:20 p.m. on February 23, 2012, Lockhart Police Department Officer Clint Williams observed a vehicle parked at what he testified was a strange angle in the parking lot behind an Auto Zone store in Lockhart. Williams testified that that portion of the parking lot was usually used only by store employees, and he found the vehicle's presence there suspicious. When he slowed down to look at the vehicle he saw that appellant was inside and appeared to be in "some form of emotional distress." Williams testified that she was rubbing her eyes and appeared to be crying. When he stopped to check on appellant, he observed that she was not crying but rather was sweating profusely even though it was not a warm day. Williams testified that appellant's speech pattern was extremely rapid and that she was not making sense. Williams stated that he deals with a lot of people under the influence of narcotics and on making contact with appellant he believed she was under the influence of some kind of stimulant.

A driver's license check revealed that Bastrop County had previously issued a warrant for appellant's arrest for the offense of theft by check. Williams then took appellant into custody and confirmed the status of the warrant. Williams handcuffed appellant and placed her in the back seat of his patrol car. Williams testified that he then "began to inventory the vehicle incident to arrest" because he was going to have the vehicle towed to an impound lot. Williams stated that while he was conducting the inventory he found a small baggy of a crystalline-type substance in the storage compartment above the rear view mirror that he believed to be narcotics. Williams testified that he then ceased the inventory and contacted his supervisor, a narcotics investigator.

2

Williams's supervisor advised Williams to seize the vehicle and have it driven to the Lockhart Police Department.

A video taken from Williams's dashboard camera was admitted into evidence during the hearing on the motion to suppress. When the video begins, appellant is already seated in the back of the patrol car and Williams reports to the police department dispatcher that he is waiting on a K-9 unit. An Auto Zone employee inquires what is going on, and Williams tells him that "there was a lady sitting back here all weird and what not," that he thinks she is "high on meth," and that he might "want to run the dog around." The Auto Zone employee walks away, and Williams gets in his patrol car. Appellant, who is fidgeting in the back seat, asks Williams to turn the car's air conditioner up. Williams then gets out of the car and begins talking on his phone. He says that he tried to contact the K-9 unit officer but did not reach him. Williams then described appellant as "geeked" and unable to sit still. After concluding that conversation, Williams's phone rings and he can be heard to say:

> Yeah, she can't sit still. She's talking 90 miles an hour. She's still sitting in the back of my car just moving and moving and moving. Yeah, not yet. I mean I looked in her purse a little bit because when I pulled up she was rubbing her nose and put her purse down beside her. Yeah, I will. I'll just inventory incident to arrest. Yeah, I'll just do that.

The video then shows Williams walking to appellant's vehicle, where he opens the driver's side door and leans into the vehicle. The sound of Williams looking through the front portion of the vehicle can be heard, and after approximately two minutes he finds the baggy containing the crystalline substance he suspects is methamphetamine. At that point, Williams calls for another officer to come

3

to the scene with a camera and requests that they "start a case for PCS"—possession of a controlled substance. The remainder of the video shows Williams asking appellant whether she owns the vehicle "free and clear" and the officers discussing that they will seize the vehicle and take it to the Lockhart Police Department. At one point, Williams comments, "That would be why she is so messed up and couldn't sit still." The video concludes with Williams driving appellant to the police station for booking.

On cross-examination, Williams confirmed that he had called for a K-9 unit because he wanted to see if the dog would alert to anything in the vehicle. Williams stated that he did not search the vehicle but had "inventoried it incident to arrest." Williams testified that the inventory was conducted in accordance with standard operating policy that had been "passed on from training officer to student," but that he was unaware if the Lockhart Police Department had any written policy regarding how to conduct an inventory. Williams described the policy as advising the officer to take a form to the car and make a list of valuables, but he stated that he did not take a form with him to this inventory because it is his practice to look through the car and then go back to his patrol car and write down what he found.

Appellant testified at the hearing that she had pulled into the Auto Zone parking lot because she needed to buy some things for an oil change for her car. She stated that she had come from Wal-Mart where she had bought some makeup, and that she was sitting in the car putting on makeup prior to going into the Auto Zone store. Appellant testified that when asked, she told Williams she was fine and nothing was wrong. Appellant stated that she was not crying and her speech was not rambling. Appellant testified that she gave Williams her driver's license when he

asked for it and volunteered that there was possibly an outstanding warrant for her arrest for a "hot check." According to appellant, she was a "nervous wreck" because she was concerned about the arrest warrant. Appellant testified that Williams asked her if he could get a K-9 unit out and she said that was fine. Williams then placed handcuffs on her and put her in his patrol car. Appellant testified that it was hot in the car and she moved around because she was uncomfortable. She denied that she had been sweating before she was placed in the patrol car. She also attributed any fidgeting on her part to concern about going to jail because of the warrant. She said that she was not concerned about or nervous that Williams would find methamphetamine in her car.

At the conclusion of the hearing, the trial court expressed the view that he found Williams's testimony regarding his concerns about appellant to be credible and that he found appellant's testimony about makeup to be "less than credible." He also expressed his view that the officer testified about legitimate signs that appellant was under the influence of a stimulant. After considering post-hearing briefing, the trial court denied the motion to suppress.

## DISCUSSION

We review a denial of a motion to suppress for an abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We apply a bifurcated standard of review, giving almost total deference to the trial court's express or implied findings of historical facts and reviewing de novo the trial court's application of the law of search and seizure. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When the trial court does not make explicit findings of historical facts, we review the evidence in the light most favorable to the trial court's ruling. *Carmouche*, 10 S.W.3d at 327. "In

5

other words, we will assume that the trial court made implicit findings of fact supported in the record that buttress its conclusion." *Id.* The trial court is the "sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We sustain the trial court's ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

"The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Mincey v. Arizona*, 437 U.S. 385, 390 (1978). Among the exceptions is the search of an automobile based on probable cause to believe it contains evidence of a crime. *See Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008). Under the automobile exception, law enforcement officials may conduct a warrantless search of a vehicle if there is probable cause to believe that it contains contraband. *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009). This exception is justified because the ready mobility of a vehicle creates an exigency, and an individual has a reduced expectation of privacy in a vehicle because it is subject to "pervasive [government] regulation." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (citing *California v. Carney*, 471 U.S. 386, 391-92 (1985)). If the automobile exception applies, law enforcement officers may search "every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982); *Neal*, 256 S.W.3d at 282.

"Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found." *Estrada v. State*, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005). Williams testified that he had experience dealing with people who are under the influence of narcotics. He testified that he observed appellant sitting in her car, sweating profusely, and wiping her nose. He also described her as fidgeting and talking very rapidly and in a confused manner. According to Williams, these are all signs of methamphetamine use. The video confirms that appellant was fidgeting as she sat in the patrol car. In the video, Williams described appellant as "geeked" and stated his belief that she was "high on meth." Based on this evidence, we conclude that the trial court could reasonably have concluded that Williams had probable cause to believe that methamphetamine would be found in appellant's vehicle. Accordingly, the trial court did not abuse its discretion when it denied appellant's motion to suppress.[1]

## CONCLUSION

We overrule appellant's sole appellate issue and affirm the trial court's order deferring adjudication of appellant's guilt and placing her on community supervision.

---

[1] Because we hold that the search was lawful pursuant to the automobile exception, we need not address the State's alternative argument that Williams was conducting a lawful inventory. *See* Tex. R. App. P. 47.1.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   November 13, 2014

Do Not Publish