**Opinion issued April 14, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-15-00317-CR**

————————————

**ANDREAS MARCOPOULOS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Case No. 1440970**

---

**O P I N I O N**

Appellant, Andreas Marcopoulos, was charged by indictment with possession

of less than one gram of cocaine.[1]  Following a motion to suppress, Appellant

---

[1]    *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), .115(a), (b) (Vernon 2010).

pleaded guilty, and the trial court placed Appellant on deferred adjudication with community supervision for three years. In four issues on appeal, Appellant argues the trial court abused its discretion by denying his motion to suppress.

We affirm.

## Background

On September 10, 2014, Officer J. Oliver was performing surveillance on a bar in Houston, Texas known for narcotics sales. Officer Oliver observed Appellant drive up to the bar in a truck, enter the bar, and leave within three to five minutes. After Appellant left the bar, Officer Oliver followed him. He saw Appellant change lanes without signaling and asked for a uniformed officer to perform a traffic stop.

Officer T. Villa was working that evening and received the request to stop Appellant. Officer Villa encountered Appellant in a left turn lane. After Officer Villa stopped behind Appellant, he observed Appellant make "furtive gestures" around the center console of the truck. Officer Oliver, waiting at the light to the right of Appellant's truck, also saw Appellant's furtive gestures. Appellant did not signal his turn until after he began to turn. Officer Villa activated his emergency lights.

Appellant immediately pulled into a gas station and parked. Officer Villa removed Appellant from the truck and placed him under arrest. Officer Villa

testified at the hearing on the motion to suppress that his partner began an inventory of the truck. The following exchange then occurred:

> Q. Why would you need to inventory the vehicle?
>
> A. We need to tow the vehicle.
>
> Q. Are you doing this -- why would you need to tow the vehicle?
>
> A. Because he was under arrest.
>
> Q. So is it your agency's policy to tow a vehicle when the driver's under arrest and not just leave it where it's parked?
>
> A. Yes.
>
> Q. This is something you would do in any instance if the driver's under arrest?
>
> A. Yes.

During the inventory, Officer Villa's partner found a small baggie of cocaine between the center console and the passenger seat. He found another inside the console. Officer Villa found a third baggie in Appellant's wallet.

Appellant called Mark Bennett as a witness at the motion to suppress. Bennett, a local defense attorney, was driving by the area when he saw Officer Villa rapidly u-turn and pull up behind Appellant's truck. Curious to see what was happening, Bennett also pulled up to the light. After Officer Villa arrested Appellant, Bennett drove by and took some pictures with his phone. Bennett acknowledged during the hearing that the bar in question was known for selling narcotics.

3

**Motion to Suppress**

In four issues, Appellant argues the trial court abused its discretion by denying his motion to suppress evidence obtained from searching the truck. The State argues Appellant failed to carry his burden of proving that he had standing to challenge the search of the truck.

**A.     Standard of Review**

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for abuse of discretion and review the trial court's application of the law to the facts de novo. *Id.* Almost total deference should be given to a trial court's determination of historical facts, especially those based on an evaluation of witness credibility or demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

When, as here, a trial judge does not make explicit findings of fact, we review the evidence in the light most favorable to the trial court's ruling. *Walter v. State*, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000). We will defer to the trial court's fact

4

findings and not disturb the findings on appeal unless the trial court abused its discretion in making a finding not supported by the record. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991).

**B.    Standing**

The Fourth Amendment of the United States Constitution protects people from unreasonable searches and seizures. U.S. CONST. amend. IV. "The rights protected by the Fourth Amendment to the U.S. Constitution . . . are personal." *Matthews v. State*, 431 S.W.3d 596, 606 (Tex. Crim. App. 2014). Accordingly, "[w]hen the legality of a search is in issue, the defendant bears the burden of proving that his own privacy rights were violated." *Flores v. State*, 871 S.W.2d 714, 719 (Tex. Crim. App. 1993).

To carry his burden, the defendant "must show (1) that he exhibited an actual subjective expectation of privacy in the place invaded (i.e., a genuine intention to preserve something as private) and (2) that society is prepared to recognize that expectation of privacy as objectively reasonable." *Matthews*, 431 S.W.3d at 606 (internal quotations and citations omitted). We perform a totality-of-the-circumstances review. *Id.* at 606–07.

> [A review of reasonable expectation of privacy is] guided by a non-exhaustive list of factors:
>
> - whether the accused had a property or possessory interest in the place invaded;

- whether he was legitimately in the place invaded;

- whether he had complete dominion or control and the right to exclude others;

- whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy;

- whether he put the place to some private use; and

- whether his claim of privacy is consistent with historical notions of privacy.

*Id.* at 607.

Here, Appellant demonstrated a possessory interest in the truck by maintaining sole, exclusive possession of the truck at all times in question. He operated the vehicle without making it available to the public.

> Because he holds the keys to the car, he may control who enters it and who drives it, thus his dominion or control is superior to all others. Unless he flings open the doors or hands the keys to a mere passer-by, the [driver] likely uses the normal precautions customarily taken by those seeking privacy in their cars. And unless the [driver] abandons the vehicle or converts it into a public bus, he likely puts the vehicle to private use.

*Id.* His expectation of privacy is consistent with historical notions of privacy. *See Oliver v. State*, 716 S.W.2d 742, 743 (Tex. App.—Fort Worth 1986, pet. ref'd) (holding person that was near car, drove car, and was arrested in car had reasonable expectation of privacy absent proof that car was not actually his).

The cases upon which the State relies are distinguishable. In *Aragon*, there were two occupants of the car. *Aragon v. State*, 229 S.W.3d 716, 719 (Tex. App.—

6

San Antonio 2007, no pet.). When the police arrived, the driver shot at him and then fled on foot. *Id.* Here, Appellant maintained exclusive possession of the truck and made no attempt to abandon the truck. *See Matthews*, 431 S.W.3d at 610 (holding fleeing defendant abandons any right to assert Fourth Amendment privacy interest in propert).

Likewise, in *Rodriguez*, the defendant told police that he had picked up the car containing cocaine with instructions to drive it to another location under instructions received from his cell phone. *Rodriguez v. State*, No. 01-04-00723-CR, 2005 WL 2850234, at *1 (Tex. App.—Houston [1st Dist.] Oct. 27, 2005, no pet.) (mem. op., not designated for publication). He told police he had done this on 14 other occasions. *Id.* There, the evidence specifically established that the defendant did not own the car in question and did not know whether he had permission of the owner to use the car. *See id.*

We hold Appellant sufficiently established standing to challenge the search of his truck.

## C.    Analysis

Appellant's four issues challenge (1) whether the search of his truck fit within the inventory-search exception to obtaining a search warrant, (2) whether the search could properly be characterized as an inventory-search, (3) whether the Houston Police Department's inventory search requirements were constitutional, and (4)

whether the search exceeded the scope of his arrest. We do not need to reach the substance of any of these issues, however, because we hold that the officers' search of his truck was valid pursuant to the automobile exception to a search warrant.

"Pursuant to the Fourth Amendment, a warrantless search of either a person or property is considered per se unreasonable subject to a few specifically defined and well established exceptions." *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003) (internal quotations omitted). When a search has been conducted without a warrant, the State carries the burden in a motion to suppress to establish the application of the exception for the requirement to obtain a warrant. *See id.*

One exception to the requirement to obtain a warrant before conducting a search is known as the automobile exception. "Under the automobile exception, law enforcement officials may conduct a warrantless search of a vehicle if it is readily mobile and there is probable cause to believe that it contains contraband." *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009). Given that Appellant drove the truck during the time in question, there is no dispute that his truck was "readily mobile." *See id.* Accordingly, the only remaining inquiry is whether the officers had probable cause to believe the truck contained contraband. *See id.*

"Probable cause to search exists when there is a 'fair probability' of finding inculpatory evidence at the location being searched. If this exception applies, then the police may search 'every part of the vehicle and its contents that may conceal

the object of the search.'" *Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008) (quoting *Wiede v. State*, 214 S.W.3d 17, 24 n.29 (Tex. Crim. App. 2007); *United States v. Ross*, 456 U.S. 798, 825, 102 S. Ct. 2157, 2173 (1982)).  As long as there is a "substantial basis" in the record to support the trial court's ruling of probable cause, it is impervious to reversal.  *State v. Carter*, 915 S.W.2d 501, 504 (Tex. Crim. App. 1996), *overruled on other grounds, Guzman v. State*, 955 S.W.2d 85, 89–90 (Tex. Crim. App. 1997).

When there has been cooperation among officers, the cumulative knowledge of the cooperating officers at the time of the stop is to be considered in determining reasonable suspicion.  *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987).  Under the collective knowledge doctrine, it is not necessary for the detaining officer to know all of the facts amounting to reasonable suspicion, as long as there is some degree of communication between the arresting officer and the officer with knowledge of all the necessary facts.  *See United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007); *see also Willhite v. State*, 937 S.W.2d 604, 607 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (citing *Pyles v. State*, 755 S.W.2d 98, 109 (Tex. Crim. App. 1988)).

Officer Oliver was performing surveillance on a bar known for narcotics sales. Appellant's witness at the motion to suppress acknowledged that the bar was known for narcotics sales.  On the evening in question, Officer Oliver observed Appellant

drive up to the bar. Officer Oliver had seen Appellant go to the bar before, but he could not conduct a stop at that time. At the time in question, Officer Oliver saw Appellant go into the bar and leave within five minutes. After Appellant left, a patrol car came up behind Appellant's truck. Once Appellant noticed the patrol car, Officer Oliver and Officer Villa both observed Appellant make "furtive gestures" around the passenger side of the truck. While furtive gestures alone are not sufficient to create probable cause, "[f]urtive movements are valid indicia of mens rea and, when coupled with reliable information or other suspicious circumstances relating the suspect to the evidence of crime, may constitute probable cause." *Smith v. State*, 542 S.W.2d 420, 421 (Tex. Crim. App. 1976).

Given Appellant's repeated history of going to a place for known for selling narcotics, his uncommonly short time spent at a bar, and his furtive gestures when he noticed a patrol car behind him, we hold there was a substantial basis in the record to support the trial court's ruling of probable cause. *See Kelley v. State*, 807 S.W.2d 810, 814 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (holding officer's knowledge of defendant and knowledge of area's reputation for drug transactions along with furtive gestures supports probable cause finding).[2] Accordingly, we hold

---

[2] *See also Coleman v. State*, No. 01-09-01071-CR, 2011 WL 5026182, at *4 (Tex. App.—Houston [1st Dist.] Oct. 20, 2011, pet. ref'd) (mem. op., not designated for publication) (upholding finding of probable cause based on tip drugs were being sold at certain location, defendant's association with specific location, furtive gestures in car, and officer seeing liquid on dash likely to be codeine).

the trial court did not abuse its discretion by denying Appellant's motion to suppress.

We overrule Appellant's four issues.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Radack, Keyes, and Higley.

Justice Radack, concurring in the judgment.

Justice Keyes, dissenting.

Publish.  Tex. R. App. P. 47.2(b).