

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0002-08

**DARRELL JAY KEEHN, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### WICHITA COUNTY

KEASLER, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, WOMACK, JOHNSON, HERVEY, and COCHRAN, JJ., joined. HOLCOMB, J., concurred.

### O P I N I O N

After seeing a propane tank containing anhydrous ammonia in a van parked in Darrell Jay Keehn's driveway, law enforcement officials entered the van and seized the tank without a warrant. The court of appeals held that the seizure was lawful under the plain view exception or, alternatively, under the automobile exception.[1] We affirm its judgment but

---

[1] *Keehn v. State (Keehn III)*, 245 S.W.3d 614, 615-16 (Tex. App.—Fort Worth 2008).

hold that the search was lawful under the automobile exception.

## Background

Keehn was charged with possession of anhydrous ammonia with intent to manufacture methamphetamine. Before trial, he filed a motion to suppress the propane tank, containing the anhydrous ammonia, that was seized from the minivan parked in his driveway during a warrantless search. The trial judge held a suppression hearing.

At the hearing, Deputy Monty Deford with the Wichita County Sheriff's Office testified that he was investigating a theft at a house near 1811 Cameron Lane. Keehn and his girlfriend, Julianne Dickson-Stevens, lived at 1811 Cameron Lane. The victim of the theft reported seeing a male and female run to the back of the house at 1811 Cameron Lane and that, a few minutes later, a minivan left the house. He tried to stop the van but was unsuccessful.

While investigating the theft, Deputy Deford went to 1811 Cameron Lane several times looking for the van, but it was not there. Days later, when Deputy Deford spotted the van parked in the driveway beside the house, he decided to talk to the residents about the theft. As he walked up the driveway to the front door, Deputy Deford looked into the van's passenger-side windows, which he testified were slightly tinted. He saw a five-gallon propane tank in the back of the van and noticed that the "cutting of the tank" had a bluish-greenish discoloration. Based on his experience, Deputy Deford concluded that the tank contained anhydrous ammonia, which is used to manufacture methamphetamine. He

proceeded to the house and knocked on the door. He heard "a bunch of rustling around the inside of the residence." After knocking for "some time," he returned to his vehicle and requested the assistance of other members of the Sheriff's Department. And, because of the propane tank, he requested the assistance of the Wichita Falls Police Department's North Texas Drug Task Force.

After other officers from the Sheriff's Department arrived, Deputy Deford went to the door of the house and knocked again. Keehn responded, and Deputy Deford told him that he was investigating the theft. Deputy Deford and the other officers entered the house. Deputy Deford asked Keehn about the theft.

Officer John Spragins, a member of the North Texas Drug Task Force, arrived shortly after Deputy Deford and the other officers entered the house. Officer Spragins received specialized training regarding the investigation and production of methamphetamine in Quantico, Virginia from the Drug Enforcement Agency. He was also involved in investigating methamphetamine production in North Texas. Recalling Keehn's case, Officer Spragins testified that, after speaking with officers from the Sheriff's Department and Keehn inside the house, he went to the van and looked in the windows. He testified that the windows were not tinted. He saw the propane tank and noticed that the valve was discolored and looked like it had been modified in some way. Based on his training and experience, Officer Spragins also believed that the tank contained anhydrous ammonia. Officer Spragins entered the van, seized the tank, and tested the tank for ammonia. The test yielded a positive

result, and Spragins arrested Keehn for possession.

Keehn testified that, when he was questioned about the van, he told the officers that the van belonged to his friend, Trey Hopkins. According to Keehn, Hopkins was trying to sell him the van and left it at Keehn's house for two months because he did not have any other place to store it. Keehn said that he drove the van for the first month but that he had not driven it for the past month. Keehn testified that he did not give the officers permission to enter the van to seize the tank.

The trial judge denied Keehn's motion to suppress. In doing so, he stated:

1. The defendant had standing to complain about the search of the van parked by his house.
2. The propane tank found in the referenced van was in plain view to officers as they made their way to the front door of the defendant's house on the normal course used to reach the front door.
3. The peace officers had a right to be in the place they were to see the propane tank.
4. The propane tank had discoloration consistent with tanks that contained anhydrous ammonia.
5. The propane tank was not designated to contain anhydrous ammonia.
6. The peace officers had probable cause to believe that a crime was being committed and therefore had the right to seize the propane tank from the van.

Keehn later pled guilty to the charge, and he was sentenced to seven years' imprisonment. Keehn preserved his right to appeal the trial judge's decision to deny his motion to suppress.

### Court of Appeals

On appeal, Keehn claimed that the trial judge erred in overruling his motion to suppress because: (1) Deputy Deford and Officer Spragins were not lawfully in his driveway

when they saw the propane tank; (2) it was not immediately apparent to Deputy Deford or Officer Spragins that the propane tank was evidence of a crime; and (3) Officer Spragins's entry into the van was unlawful under the plain view exception to the warrant requirement.[2] Responding to Keehn's first argument, the Fort Worth Court of Appeals held that "law enforcement officers had a right to be where they were when they observed the propane tank."[3] Taking into account Officer Spragins's training and experience, the court found that Officer Spragins's testimony established that it was immediately apparent to him that the propane tank constituted evidence of a crime.[4] As a result, the court found that the plain view exception to the warrant requirement applied to this case and overruled Keehn's point of error.[5]

After the court of appeals denied his motion for rehearing, Keehn filed a petition for discretionary review. He claimed that the court of appeals ignored his argument that the plain view doctrine did not justify the warrantless entry into the van.[6] We agreed and remanded the case to the court of appeals.[7]

---

[2] *Keehn v. State (Keehn I)*, 223 S.W.3d 53, 55-56 (Tex. App.—Fort Worth 2007).

[3] *Id.* at 58.

[4] *Id.* at 59.

[5] *Id.*

[6] *Keehn v. State (Keehn II)*, 223 S.W.3d 348, 349 (Tex. Crim. App. 2007) (per curiam).

[7] *Id.*

Outwardly displeased with our decision, the court of appeals declared that it had addressed every issue Keehn raised.[8]  Nevertheless, the court went on to hold:

> To the extent that Keehn's sole issue contains a sub-argument that the plain view doctrine did not authorize the officers to open the unlocked door of the van to seize the propane tank, when, for the reasons set forth in our prior opinion they had a lawful right to be on Keehn's driveway where they observed the tank, and which, for the reasons set forth in our prior opinion, they had probable cause to believe constituted evidence of a crime, we expressly reject that argument.[9]

The court also held, in the alternative, that the police had the authority to open the van and seize the tank pursuant to the automobile exception.[10]  The court then affirmed the trial court's judgment.[11]

### Appellant's Petition for Discretionary Review

We granted Keehn's petition for discretionary review to decide whether the court of appeals erred in holding that the warrantless entry into the van in Keehn's driveway was justified under the plain view or automobile exceptions to the Fourth Amendment's warrant requirement.

---

[8]  *Keehn III*, 245 S.W.3d at 615.

[9]  *Id.* (citing *Martinez v. State*, 17 S.W.3d 677, 685 (Tex. Crim. App. 2000); *Ramos v. State,* 934 S.W.2d 358, 365 (Tex. Crim. App. 1996); *State v. Haley*, 811 S.W.2d 597, 599 (Tex. Crim. App. 1991); *Ramirez v. State*, 105 S.W.3d 730, 745 (Tex. App.—Austin 2003, no pet.)).

[10]  *Id.* at 616 n.3 (citing *Maryland v. Dyson*, 527 U.S. 465, 467 (1999); *Amos v. State*, 819 S.W.2d 156, 161 (Tex. Crim. App. 1991)).

[11]  *Id.*

Initially, we note that Keehn also challenged the search and seizure under Article I, Section 9 of the Texas Constitution on appeal. Keehn, however, failed to separately brief the state constitutional issue in the court of appeals[12] and, as a result, the court of appeals did not reach that issue. Because our authority on discretionary review is limited to reviewing decisions of the court of appeals, we cannot consider Keehn's state constitutional claim.[13]

## Discussion

When a trial judge enters findings of fact after denying a motion to suppress, an "appellate court [must first] determine[] whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings."[14] If the findings are supported by the record, appellate courts will "afford almost total deference to a trial court's determination of the historical facts" when they "are based on an evaluation of credibility and demeanor."[15] Appellate courts give "the same amount of deference" to "'mixed questions of law and fact[]' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor."[16] But when the resolution of mixed law and fact questions do not depend upon an evaluation of credibility and demeanor, appellate courts are permitted to

---

[12] *See generally Hulit v. State*, 982 S.W.2d 431, 436 (Tex. Crim. App. 1998).

[13] T EX. R. APP. P. 66.1.

[14] *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

[15] *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[16] *Id.*

conduct a de novo review.[17]

The court of appeals reached the correct result but erred in upholding the trial judge's ruling under the plain view exception. This case illustrates the nuances involving the plain view and the automobile exceptions to the Fourth Amendment's warrant requirement.

A seizure of an object is lawful under the plain view exception if three requirements are met. First, law enforcement officials must lawfully be where the object can be "plainly viewed."[18] Second, the "incriminating character" of the object in plain view must be "'immediately apparent'" to the officials.[19] And third, the officials must have the right to access the object.[20]

In his petition and brief, Keehn focuses on the third requirement, arguing that Officer Spragins did not have a lawful right under the plain view doctrine to enter the van and seize the propane tank without a warrant. We agree. Plain view, in the absence of exigent circumstances, can never justify a search and seizure without a warrant when law enforcement officials have no lawful right to access an object.[21] The court of appeals therefore was mistaken in upholding the seizure of the tank under the plain view exception

---

[17] *Id.*

[18] *Horton v. California*, 496 U.S. 128, 136 (1990).

[19] *Id.* (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971) (plurality opinion)).

[20] *Id.* at 137.

[21] *Id.* 137 n.7 (quoting *Coolidge*, 403 U.S. at 468 (plurality opinion).

because Officer Spragins had no lawful right, absent some exception to the warrant requirement, to enter the van.[22]

The court of appeals did, however, correctly cite the automobile exception,[23] even though it erred in relying on it as an alternative holding. Under the automobile exception, law enforcement officials may conduct a warrantless search of a vehicle if it is readily mobile and there is probable cause to believe that it contains contraband.[24] There are two justifications behind this exception. First, the "ready mobility" of a vehicle creates "an exigency . . . ."[25] Second, an individual has a reduced expectation of privacy in a vehicle because it is subject to "pervasive [government] regulation."[26]

Keehn argues that the automobile exception does not apply in this case because the van was parked in his driveway. Keehn contends that the automobile exception applies only when a vehicle is located in a public place that is not regularly used for residential purposes.

---

[22] *Id.* at 135-36 ("The doctrine [of plain view] serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits a warrantless seizure") (quoting *Coolidge*, 403 U.S. at 465-66 (plurality opinion).

[23] *Keehn III*, 245 S.W.3d at 616 n.3.

[24] *California v. Carney*, 471 U.S. 386, 393 (1985); *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996).

[25] *Labron*, 518 U.S. at 940 (citing *Carney*, 471 U.S. at 390-91; *Carroll v. United States*, 267 U.S. 132, 153 (1925)).

[26] *Id.* (citing *Carney*, 471 U.S. at 391-92).

Supporting this argument, Keehn points us to the following statement from the United States Supreme Court's opinion in *Carney v. California*: "When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes—temporary or otherwise—the two justifications for the vehicle exception come into play."[27]

Keehn's narrow reading of *Carney* is incorrect. *Carney* involved a warrantless search of a motor home parked in a public lot in downtown San Diego, California.[28] The Court upheld the search noting that, although the vehicle "possessed . . . many of the attributes of a home," it was readily mobile and subject to regulation.[29] The Court also stated that an "objective observer would conclude that it was being used not as a residence, but as a vehicle."[30] Given the particular facts of *Carney,* the quoted text above strongly suggests that the location of a motor home is extraordinarily important when determining whether to characterize it as a vehicle or residence under Fourth Amendment jurisprudence, which recognizes that individuals possess a greater privacy interest in a fixed residence.[31] *Carney*'s reference to "a place not regularly used for residential purposes" in no way stands as a per

---

[27] *Carney*, 471 U.S. at 392-93.

[28] *Id*. at 388.

[29] *Id*. at 393.

[30] *Id*.

[31] *Id*. at 390.

se bar on the application of the automobile exception to a vehicle parked in the driveway of a private residence. Indeed, our reading of the quoted text is reinforced by the Court's observation that it did not have to decide whether the automobile exception applies to "a motor vehicle that is situated in a way or place that objectively indicates that it is being used as a residence."[32] Furthermore, numerous other courts have adopted our reading of *Carney* when confronted with the same argument that Keehn advances here.[33]

The automobile exception gave Officer Spragins the right to enter the van and seize the propane tank. The van was readily mobile, as demonstrated by Keehn's use of it days before the search, and it was subject to regulation. And based on his training and investigative experience concerning the production of methamphetamine, Officer Spragins had probable cause to believe that the tank contained anhydrous ammonia.

**Conclusion**

The seizure of the propane tank from the van parked in Keehn's driveway was lawful under the automobile exception to the warrant requirement. Therefore, the court of appeals did not err in affirming the trial court's judgment.

---

[32] *Id.* at 394 n.3.

[33] *Harris v. State*, 948 So. 2d 583, 591 (Ala. Crim. App. 2006) (citing *State v. Cox*, 351 S.E.2d 570, 571-72 (S.C. 2006); *United States v. Brookins*, 345 F.3d 231, 237-38 (4th Cir. 2003); *State v. Marquardt*, 635 N.W.2d 188, 200 (Wis. Ct. App. 2001); *United States v. Fladten*, 230 F.3d 1083 (8th Cir. 2000); *United States v. Markham*, 844 F.2d 366 (6th Cir. 1987); *United States v. Moscatiello*, 771 F.2d 589 (1st Cir. 1985), vacated on other grounds sub nom. *Carter v. United States*, 476 U.S. 1138 (1986); *United States v. Hamilton*, 792 F.2d 837 (9th Cir. 1986); *People v. Garvin*, 597 N.W.2d 194 (Mich. App. 1999); *Commonwealth v. A Juvenile* (No. 2), 580 N.E.2d 1014 (Mass. 1991)).

DATE DELIVERED: March 25, 2009
PUBLISH