# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00724-CR

**Stephen Tracy Meredith, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BURNET COUNTY, 424TH JUDICIAL DISTRICT
## NO. 41286, HONORABLE DANIEL H. MILLS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following the trial court's denial of appellant Stephen Tracy Meredith's motion to suppress, a jury convicted appellant of possession of less than one gram of cocaine, a state-jail felony, which was enhanced to a third-degree felony due to appellant's two previous state-jail felony convictions. The jury assessed punishment at six years' imprisonment and a $6,000 fine. In a single issue, appellant challenges the trial court's denial of his motion to suppress. We will affirm the trial court's judgment.

## BACKGROUND

The record shows that on June 7, 2012, investigators with the Burnet Police Department observed appellant in a car waiting at a gas pump in Marble Falls for a man whom officers knew to be the subject of narcotics investigations. Investigators observed each of the men drive away in separate cars but in the same direction. One of the investigators identified both men

by sight and then used a database to check the status of the men's driver's licenses. The investigator determined that neither appellant nor the other man had a valid driver's license. As a result, investigators stopped both men. Investigators arrested appellant for driving without a valid driver's license and then conducted an inventory of his vehicle. During the search, they found a pipe that was known by investigators as one commonly used to smoke crack cocaine and two baggies containing residue from an unknown substance. After the completion of the inventory search, officers impounded appellant's car.

That same day, while appellant's car was in the impound lot, an officer brought a trained police dog to circle the car and indicate if the dog detected narcotics. The dog alerted to the presence of narcotics near the driver's side door. Based on the dog's alert, officers searched the car but did not find any narcotics.

In the days following the search, appellant made several calls to the impound lot to arrange to pick up his car, but he could not afford to get his car released. Instead, he asked that he be allowed to go to the impound lot and remove certain personal items from the car. Approximately ten days after the impoundment of the car, appellant went to the impound lot with a friend to get the personal items. The owner of the impound lot, Garry Adams, was present at the time. Adams was also a law enforcement officer and was currently serving as a constable in Burnet County.

Adams observed appellant get into the passenger seat of the car and take items from the car while appellant's friend took items from the back of the car. Adams further observed appellant tugging at the ceiling of the car between the driver's seat and passenger seat. Appellant seemed to be trying to pull down the console itself, at the spot where the console met the ceiling

upholstery. Adams observed that appellant seemed "kind of nervous" as he continued to go back to that same spot after intermittently looking in other areas of the car and looking at Adams. Adams twice asked appellant to stop pulling at the upholstery of the car because Adams did not want the car to be damaged while it was in his possession. Appellant eventually stopped pulling on the ceiling, gathered items from the car, and left with his friend. After appellant left, Adams contacted police officers and told them he believed that appellant had been trying to access contraband hidden in the ceiling of the car. Officers arrived at the lot the following day. They pulled at the same spot in the ceiling where appellant had been pulling, and a small bag containing an off-white-colored rock substance became visible. Officers sent the substance to the lab for testing, and the lab identified the substance as 0.14 grams of cocaine.

The State subsequently charged appellant with possession of less than one gram of cocaine. In a pre-trial hearing, appellant urged his motion to suppress, which the trial court denied. After a trial, a jury convicted appellant of the charged offense, found two previous state-jail felony convictions true, sentenced appellant to six years in prison, and assessed a $6,000 fine. Appellant appeals from the trial court's denial of his motion to suppress.

**STANDARD OF REVIEW**

We review a trial court's ruling on a motion to suppress under an abuse of discretion standard. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). In doing so, we view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). We give deference to the trial court's determination of historical facts, especially if those are based on an assessment of credibility and demeanor. *Arguellez v. State*,

3

409 S.W.3d 657, 662 (Tex. Crim. App. 2013). We afford the same deference to rulings on application of the law to questions of fact and to mixed questions of law and fact if resolution of those questions depends on an assessment of credibility and demeanor of witnesses. *Id.* We review de novo pure questions of law and mixed questions of law and fact that do not depend on evaluating credibility and demeanor. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011).

## WARRANTLESS SEARCH

Evidence seized by police without a warrant is admissible only if an exception to the Fourth Amendment's warrant requirement applies. *Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008). It is undisputed that the final search of appellant's car was conducted without a warrant. Accordingly, the burden shifts to the State to prove the applicability of an exception to the warrant requirement. *See Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *Russell v. State*, 717 S.W.2d 7, 9-10 (Tex. Crim. App. 1986)*, disapproved on other grounds by Handy v. State*, 189 S.W.3d 296 (Tex. Crim. App. 2006).

If there is probable cause to believe a car contains evidence of criminal activity, officers may properly search any area of the car in which the evidence may be found. *Arizona v. Gant*, 556 U.S. 332, 347 (2009). We use a totality-of-the-circumstances analysis in determining whether probable cause exists. *See Wiede*, 214 S.W.3d at 25; *Whaley v. State*, 686 S.W.2d 950, 951 (Tex. Crim. App. 1985). In reviewing whether the officers here had probable cause, we defer to the trial court's express or implied determination of historical facts, and we review de novo the trial court's application of the law to the facts. *See Wiede*, 214 S.W.3d at 25.

4

Probable cause exists when the totality of facts and circumstances known to the officers is sufficient to warrant a belief by a person of reasonable prudence that contraband or evidence of a crime will be found in the place to be searched. *See id*. at 24. Facts and circumstances personally known to an officer encompass the officer's "training, knowledge, and experience." *See id*. Probable cause may be based on an officer's training and investigative experience. *See Keehn v. State*, 279 S.W.3d 330, 336 (Tex. Crim. App. 2009). While furtive gestures alone do not establish probable cause, a combination of furtive gestures and other facts can establish probable cause under the totality-of-the-circumstances analysis. *See Wiede*, 214 S.W.3d at 25-28; *Smith v. State*, 542 S.W.2d 420, 421-22 (Tex. Crim. App. 1976).

**DISCUSSION**

Appellant concedes that the police had probable cause to search his car after the dog alerted to the presence of narcotics but argues that the probable cause became stale during the approximately ten days that passed between the dog's alert and appellant's furtive gestures. Appellant contends that the officers were therefore required to obtain a search warrant before conducting a further search of the car.

Appellant is correct that the officers had probable cause to search his car when the dog alerted to the presence of narcotics in the car. *See Parker v. State*, 182 S.W.3d 923, 924 (Tex. Crim. App. 2006); *Branch v. State*, 335 S.W.3d 893, 901 (Tex. App.—Austin 2011, pet. ref'd) ("The law is well established that as soon as a drug-detection dog alerts on a car, officers have probable cause to search the car without a warrant."). Further, the fact that a car is impounded at the time that

5

probable cause develops does not inhibit an officer's right to conduct the warrantless search. *See Florida v. Meyers*, 466 U.S. 380, 382 (1984); *Michigan v. Thomas*, 458 U.S. 259, 261 (1982) (noting that "the justification to conduct . . . a warrantless search does not vanish once the car has been immobilized").

Here, the evidence shows that a trained police dog alerted to the presence of narcotics in the car after the car was towed to the impound lot. A subsequent search of all of the typical compartments of the car did not yield narcotics, but appellant later went to the impound lot and was observed by a trained peace officer to be nervous and pulling on an area of the ceiling that was not a typical compartment opening. Adams, the impound-lot owner, testified that he had been a certified peace officer since 1993. Among other law-enforcement jobs he held during his career, Adams had worked for the Burnet County Sheriff's Office for approximately eight years and the Burnet Police Department for approximately eight years. During his years in law enforcement, Adams had stopped numerous people who were concealing drugs in hidden compartments in their cars. He testified that such hidden compartments were "pretty typical."

Adams testified that his towing business and impound lot are regulated by the Texas Department of Licenses and Regulations and that all cars towed to his impound lot are required to be locked and secured in a fenced, restricted area. He testified that he keeps all of the car keys for the impounded cars in a lockbox in his business office.

Given the totality of the circumstances—including the dog's alert indicating the presence of narcotics; the car's secure location in a restricted area with the keys in a lock box; appellant's furtive gestures indicating to Adams, a trained police officer, that the narcotics were

6

located in a hidden compartment; Adams's observation of appellant leaving without removing any items from the suspected hidden compartment; and the car's continued secure location in a restricted area with the car keys in a lock box—the evidence is sufficient to warrant a belief by a person of reasonable prudence that contraband would be found in appellant's car at the time of the final search of the car. *See Parker*, 182 S.W.3d at 924 (dog's alert creates probable cause to search); *Keehn*, 279 S.W.3d at 336 (probable cause may be based on officer's training and investigative experience); *Smith*, 542 S.W.2d at 421-22 (furtive gestures can combine with other facts to create probable cause). The circumstance that appellant relies on so heavily in his brief—that approximately ten days passed between the dog's alert and appellant's furtive gestures—does not change the result of our totality-of-the-circumstances analysis because the evidence shows that the car was locked and secured in an impound lot the entire time.[1] Accordingly, officers had probable cause to search

---

[1] Appellant cites *State v. Clack*, No. 13-13-00345-CR, 2014 WL 4494512 (Tex. App.—Corpus Christi, Sept. 11, 2014, pet. ref'd) (mem. op., not designated for publication) in support of his argument that the probable cause that arose due to the dog alert became stale by the time of the final search of his car. However, *Clack* is distinguishable from this case. In *Clack*, the court granted the suspect's motion to dismiss because the only evidence supporting a belief that evidence of a crime would be discovered in the suspect's car was evidence that the suspect was seen driving in the car more than two weeks before his arrest with items that could be evidence of a crime and then was seen driving in the car one more time. *Id*. at *6. At the time of the arrest, the suspect's car was not near him and was parked in a parking lot. *Id*. at *2. There was no evidence of where the car had been in more than two weeks other than the two sightings of the suspect driving the car. Given the evidence in *Clack*, the court determined that a reasonable officer could not expect that the car would still contain evidence of a crime that occurred more than two weeks earlier. *Id*. at *6.

Here, as explained above, appellant's car remained within a secure impound lot during the entire time between the dog's alert and appellant's furtive gestures. Appellant's car then further remained secure within the impound lot between the time of appellant's furtive gestures and the final search of the car. Unlike the officers in *Clack*, the officers here had every reason to believe that contraband would still be present in appellant's car.

7

appellant's car after appellant was observed making furtive gestures, and the trial court did not abuse its discretion in denying appellant's motion to suppress.

## CONCLUSION

Because we conclude that the trial court did not err in denying appellant's motion to suppress, we affirm the trial court's judgment of conviction.

_____
Cindy Olson Bourland, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   October 15, 2015

Do Not Publish

8