

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-15-00061-CR

_____

DONALD WAYNE LEWIS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 47th District Court
Randall County, Texas
Trial Court No. 24,655-A; Honorable Dan Schaap, Presiding

November 22, 2016

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, Donald Wayne Lewis, was charged by indictment with the felony offense of burglary,[1] enhanced by two prior felony convictions.[2]  During the course of pretrial proceedings, various motions to suppress were filed.  Those motions were

---

[1] TEX. PENAL CODE ANN. §§ 30.02(a)(1), (a)(3) (West 2011).  The indictment alleged Appellant intentionally or knowingly entered a habitation and committed or attempted to commit theft.  As such, the offense was a second degree felony.  _Id._ at § 30.02(c)(2).

[2] As enhanced, the offense was punishable by confinement for any term of not more than 99 years or less than 25 years.  TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2016)

granted in part and denied in part. After waiving his right to a jury trial, and with consent of the State, the case proceeded to trial before the bench. The trial court found Appellant guilty, found the enhancement paragraphs to be true, and sentenced him to forty-five years confinement. By his first three issues, Appellant challenges the trial court's rulings on his motions to suppress. Specifically, he contends the trial court erred in overruling his motion to suppress the arrest warrant (issue one), his vehicle (issue two), and the contents of his vehicle (issue three). By his fourth issue, Appellant maintains the evidence is insufficient to support his conviction. We affirm.

BACKGROUND

In August 2013, the Randall County Sheriff's Office was investigating several residential burglaries. A victim of one of those burglaries was Gary Pastwa. Mr. Pastwa's residence had been burglarized on August 24th. According to his statement to the police, he was returning home from an errand when he observed a red Suburban, with front-end damage, parked behind his garage. Mr. Pastwa described a "very large black man," wearing a tank top, running to that vehicle, and then attempting to assault him with the vehicle as he departed. Mr. Pastwa was able to provide Randall County authorities with a description of the individual and the vehicle's license tag number. Ownership of the vehicle was traced to Appellant and his wife; however, Mr. Pastwa was unable to identify Appellant in a photo lineup as the person who had burglarized his residence and attempted to strike him with that vehicle.

On August 26th, based on Mr. Pastwa's statement to the police, an arrest warrant was issued for Appellant. A "blue warrant" was also issued based upon the

2

arrest warrant.[3]  The following day, Randall County authorities sent an advisory email to the Amarillo Police Department.  The email notified the department that an arrest warrant and blue warrant for Appellant had been issued and it identified Appellant's 1997 red Suburban as evidence in the Pastwa burglary and attempted aggravated assault.

On August 28, 2013, sometime between 8:30 a.m. and 3:00 p.m., the residence of Ramona Coffman was burglarized and various items were taken.[4]  Among the items taken were pieces of jewelry, two jewelry boxes, a camera, a laptop, an iPad, an undetermined amount of loose change, and two $50 bills.  Later that same afternoon, but before learning of the Coffman burglary, Amarillo Police Department officers observed a vehicle matching the vehicle described in the advisory email.[5]  The officers activated their patrol car emergency lights and pursued the vehicle until it pulled into a private driveway located in Potter County.  Appellant exited the vehicle and claimed to know the occupants of the residence where he had stopped.  The owner of that property, however, was not familiar with Appellant or his vehicle and specifically informed the police she did not want the vehicle to remain on her property.  Appellant was arrested based upon the existing arrest warrant and blue warrant.

Appellant requested that his vehicle be released to his father; however, because it was considered to be evidence in the Pastwa burglary and attempted aggravated assault, it was released to the Randall County Sheriff's Office.  The vehicle was

---

[3] A "blue warrant" is a type of arrest warrant issued by the Texas Parole Board.

[4] The Coffman burglary is the subject of this appeal.

[5] The vehicle in question, a red 1997 Chevrolet Suburban, matched the make, model, color, and license tag number of the vehicle identified by Mr. Pastwa.

3

subsequently towed from Potter County to Randall County. Although the Amarillo Police Department never formally impounded or inventoried the vehicle, officers did photograph the vehicle and conduct a cursory, non-invasive inspection.[6]

The next day, the Randall County Sheriff's Office obtained a search warrant for the vehicle. The vehicle was then searched and evidence from the Coffman burglary was located. Specifically, the search lead to the recovery of pieces of jewelry, an iPad, a Walmart coin voucher receipt for the exchange of $170.99, photographs of Ms. Coffman's niece and nephew, and a business card that had been torn.

Although Appellant did not contest the validity of the vehicle search warrant, he did seek to suppress evidence found inside the vehicle on the basis that *his arrest* was based upon an illegally issued arrest warrant and blue warrant. Specifically, Appellant contended the affidavit in support of the arrest warrant omitted relevant evidence (i.e., the inability of Mr. Pastwa to identify Appellant in a photo lineup) and it contained material contradictions and misrepresentations (regarding the description of the person seen fleeing from the Pastwa burglary as compared to an actual description of Appellant) which affected the validity of the arrest warrant. Appellant further contended the blue warrant was equally defective because it was based upon the illegal arrest warrant.

Following the conclusion of several suppression hearings, the trial court found the arrest warrant and blue warrant to be defective. The court further found, however,

---

[6] The APD officers did lean into the vehicle and determined that there was no incriminating evidence in plain view. The officers did not probe the contents of the vehicle.

that the vehicle was properly seized because it was evidence of a crime committed in Randall County. In his conclusions of law, the trial judge found as follows:

(1) the arrest warrant was based on insufficient probable cause;

(2) the blue warrant lacked a sufficient basis for its issuance because it was procured based upon the illegal arrest warrant;

(3) the vehicle in question was properly stopped and seized based upon a credible report that it had been used in and was evidence of a burglary in Randall County;

(4) the transfer of the vehicle from Potter County to Randall County did not violate Articles 18.10 and 14.03 of the Texas Code of Criminal Procedure;

(5) that if the transfer did violate Articles 18.10 and 14.03 of the Texas Code of Criminal Procedure, such violation did not require the exclusion of the vehicle or items found in the vehicle; and

(6) the reckless misrepresentation contained in the probable cause affidavit used to obtain the arrest warrant does not require the exclusion of the vehicle or items found in the vehicle authorized by the subsequently issued search warrant.

ISSUES ONE, TWO, AND THREE

By his first three issues, Appellant contends the trial court erred by failing to suppress evidence concerning his vehicle and items recovered therefrom because, if the arrest warrant was bad, any evidence obtained as a result of that arrest was also tainted. Appellant further contends that evidence was subject to suppression because it was obtained in violation of article 38.23 of the Texas Code of Criminal Procedure because the vehicle was removed from Potter County without a court order as required by article 18.10 of that same code.

5

APPLICABLE LAW

The trial court's ruling on a motion to suppress is reviewed under a bifurcated standard. *Cole v. State*, 490 S.W.3d 918, 922 (Tex. Crim. App. 2016). Where, as here, the trial court enters findings of fact after denying a motion to suppress, we must determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009). If the findings are supported by the record, we will afford almost total deference to the trial court's determination of historical facts when they are based on an evaluation of credibility and demeanor. *Id.* We give the same amount of deference to mixed questions of law and fact if resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* But when resolution of mixed questions of law and fact do not depend on an evaluation of credibility and demeanor, we conduct a *de novo* review. *Id.* The trial court is the sole trier of fact of witnesses' credibility and the weight to be given their testimony. *Valtierra v. State*, 320 S.W.3d 442, 447 (Tex. Crim. App. 2010). We will uphold the trial court's ruling if the record reasonably supports it and it is correct on any theory of law applicable to the case. *Id.* at 448.

ANALYSIS

The trial court conducted a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).[7] The trial court found that a reckless

---

[7] In *Franks*, the Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the alleged false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155-56. If the defendant establishes his burden by a preponderance of the evidence and the remaining content of the affidavit is insufficient to establish probable cause, the search warrant must be voided and the evidence of the search excluded. *See id. See also Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007).

6

misrepresentation of material facts was made to the magistrate regarding the identification provided by Mr. Pastwa resulting in the sworn complaint being insufficient to establish probable cause to support the issuance of the arrest warrant or the blue warrant. However, in its *Conclusions of Law*, the trial court determined that the reckless misrepresentation in the last sentence of the sworn complaint did not require suppression of either Appellant's vehicle or the items subsequently discovered inside. The trial court further concluded that if articles 18.10 or 14.03 of the Texas Code of Criminal Procedure were violated, those violations did not require exclusion under article 38.23 of the Code of either the vehicle or the items subsequently discovered in it.

Alleging the trial court disregarded *Franks*, Appellant argues that but for the invalid warrants, he would not have been arrested and his vehicle would not have been seized and searched. He concludes the trial court should have suppressed all the evidence found in his vehicle. Although the State concedes in its brief that the arrest warrant and blue warrant were invalid, it asserts several legal theories under which the officers acted lawfully. The State argues the officers had probable cause to believe Appellant's vehicle was evidence in a crime *via* independent evidence (the email and crime analysis bulletin regarding the Pastwa burglary) that dispensed with the necessity of a valid warrant. The State also argues the officers had authority to arrest Appellant without a warrant pursuant to article 14.03(a)(1) of the Code of Criminal Procedure because an officer may conduct a warrantless arrest of "persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony. . . ." TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1) (West Supp. 2016). Finally, the State maintains the officers had authority under the plain view

doctrine and the automobile exception to a warrant to seize the vehicle and its contents. We need only find one correct theory of law applicable to the case to uphold the trial court's ruling. *Keehn*, 279 S.W.3d at 334.

The Fourth Amendment to the United States Constitution and Article 1, Section 9 of the Texas Constitution protect against unreasonable searches and seizures. U.S. CONST. amend IV.; TEX. CONST. art. I, § 9. An investigative detention is reasonable, and thus constitutional, if (1) the officer's action was justified at the detention's inception, and (2) the detention was reasonably related in scope to the circumstances that justified the interference in the first place. *Terry v. Ohio*, 392 U. S. 1, 19-20, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). For the officer's initial action to be justified under the first *Terry* prong, we ask whether there existed specific, articulable facts that, taken together with rational inferences from those facts, reasonably warranted that intrusion. *Id.* at 21. Specifically, the officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the unusual activity is related to a crime. *See Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).

In the underlying case, the officers had independent information that a 1997 red Suburban with a specific license plate number was involved in a burglary and attempted aggravated assault. They also were aware that Appellant, the owner of that vehicle, was a suspect in those offenses. The officers who stopped Appellant were on patrol when they observed the vehicle described in the email and crime analysis bulletin. Upon confirming the license plate number, the officers activated the emergency lights of their patrol car. Appellant eventually stopped at a residence in Potter County. At that

8

time, the officers had specific, articulable facts that the vehicle was evidence in the Pastwa burglary and attempted aggravated assault. Thus, the officers had reasonable suspicion to initiate an investigatory detention.

Once detained, the officers had authority to seize the vehicle under the plain view doctrine. The plain view doctrine permits an officer to seize contraband if he has a right to be where the contraband is and it is immediately apparent the seized item constitutes evidence, i.e., that there is probable cause to associate the item with criminal activity. *Ramos v. State*, 934 S.W.2d 358, 365 (Tex. Crim. App. 1996). Probable cause exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).

The officers were in a place where they were allowed to be, to wit: on patrol on a public road. They had specific and articulable, independent information establishing probable cause to believe that Appellant's vehicle constituted evidence in the Pastwa burglary and attempted aggravated assault. Thus, they acted lawfully in stopping the vehicle and seizing that evidence. *Martinez v. State*, 17 S.W.3d 677, 684 (Tex. Crim. App. 2000).

ARTICLE 18.10

Article 18.10 of the Texas Code of Criminal Procedure provides in pertinent part that property seized pursuant to a search warrant "may not be removed from the county in which it was seized without an order approving the removal, issued by a magistrate in the county in which the warrant was issued." *See* TEX. CODE CRIM. PROC. ANN. art. 1810

9

(West 2015). As a subsidiary issue to his suppression issues, Appellant argues that the removal of his vehicle from Potter County and its transfer to Randall County, without a court order approving the removal as required by article 18.10 of the Texas Code of Criminal Procedure, compelled exclusion of the evidence (the vehicle and its contents) under article 38.23 of the same Code.

Here, article 18.10 was not implicated because the vehicle was not seized pursuant to a search warrant. It was seized as evidence of a crime and the subsequent search warrant resulting in the discovery of its contents is not being contested. Furthermore, even assuming the transportation of the vehicle from Potter County to Randall County somehow violated article 18.10, the Texas Court of Criminal Appeals has found that article 38.23 does not apply to violations of that article. *Martinez*, 17 S.W.3d at 686. In *Martinez*, the Court distinguished article 38.23's requirement to exclude evidence *obtained* in violation of the law with article 18.10's requirement of removal of property from a county *after* the property has already been seized. *Id.* (Emphasis in original). The fact that officers may move an item of evidence to an unauthorized location after it has been legally obtained does not vitiate the status of such evidence as having been legally obtained. *Id.* Appellant further posits that *Martinez* does not apply because his vehicle was not lawfully seized. Having concluded that Appellant's vehicle was lawfully seized, we find this argument to be without merit.

Appellant's final challenge regarding the trial court's ruling on his suppression motions is the lack of proper procedure in failing to impound his vehicle and in failing to conduct an inventory search. He asserts that Amarillo police officers "searched" his vehicle by "leaning in" and taking pictures while waiting for the Randall County Sheriff's

Office to take custody of the vehicle. He maintains that lack of proper procedure required suppression of all evidence inside the Suburban. Again, we disagree.

When Appellant was stopped, he exited the vehicle and left one of the doors open. An officer "leaned into" the vehicle and took photographs, but no invasive search or probing was conducted. The vehicle was then released to the Randall County Sheriff's Office. No incriminating evidence of the Coffman burglary was found until after Randall County obtained a search warrant.[8] While this court does not condone failure to follow proper procedure, the Texas Court of Criminal Appeals has held that movement of evidence from one location to another after it has been legally obtained does not change the evidentiary status of that evidence. *Martinez*, 17 S.W.3d at 686. Having previously concluded the Suburban was lawfully seized, its movement from Potter County to Randall County without strict adherence to article 18.10 of the Code of Criminal Procedure did not render the vehicle or its contents inadmissible. *See Barnes v. State*, 424 S.W.3d 218, 226 (Tex. App.—Amarillo 2014, no pet.) (noting that the correctness of the trial court's ruling on a motion to suppress does not rest on a proper impoundment of a vehicle). We conclude the trial court did not abuse its discretion in denying Appellant's various motions to suppress. Issues one, two, and three are overruled.

---

[8] Appellant specifically announced to the trial court, through his counsel, that he was not challenging the search warrant. Defense counsel stated, "the search warrant is irrelevant because it is obtained after the illegality occurred." He continued, "I'm not arguing that the search warrant is improper." Consequently, any complaints regarding the validity of the search warrant are waived. TEX. R. APP. P. 33.1(a)(1)(A); *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

ISSUE FOUR

By his fourth issue, Appellant contends the evidence is insufficient to support his conviction. The only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 33 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *See Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under that standard, this court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 318-19.

A person commits burglary when, without the effective consent of the owner, he enters a habitation with intent to commit theft. TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011). When a defendant is in possession of recently stolen property and fails to provide a reasonable explanation of that possession, the trier of fact may draw an inference of guilt as to the theft of that property. *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006). If, however, a defendant offers an explanation for his possession of recently stolen property, the record must demonstrate that the defendant's explanation at the time of his possession is either false or unreasonable before the evidence will support his conviction. *Jackson v. State*, 12 S.W.3d 836, 839 (Tex. App.—Waco 2000, pet. ref'd). Whether an explanation is true is a question for the trier of fact. *Dixon v. State*, 43 S.W.3d 548, 552 (Tex. App.—Texarkana 2001, no pet.).

12

Here, there was no direct evidence that Appellant burglarized the Coffman residence. However, circumstantial evidence is as equally probative as direct evidence in establishing guilt. *Lashley v. State*, 401 S.W.3d 738, 747 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In that regard, Ms. Coffman testified that when her son returned home from school on the day of the burglary, he found it had been ransacked and called her at work. She then called 911. She immediately discovered certain items were missing and, in the following days, discovered other items were also missing. She testified she immediately noticed her iPad, laptop, two jewelry boxes, pieces of jewelry, two $50 bills, and containers of change were missing. She further testified Appellant did not have permission to enter her home.

After Appellant was arrested and items were discovered in his vehicle, the authorities identified Ms. Coffman from her iPad email address. Found with the iPad were photos that she identified as being of her niece and nephew. The State also introduced a Walmart receipt from a coin voucher for $170.99 that was found in Appellant's vehicle. The receipt was dated the same date as the burglary and was time-stamped 13:46:55. Several video clips from Walmart were also admitted into evidence, showing Appellant and his vehicle at Walmart during the time the change was converted for cash.

While Appellant was in custody, he was interviewed by a detective. The recording of that interview was played for the trial court. Appellant claimed to have purchased Ms. Coffman's iPad from a person named Johnny at a convenience store but was unable to provide any information regarding Johnny for officers to confirm his explanation. Authorities investigated the location where Appellant allegedly purchased

13

the iPad but found no evidence to support his explanation for its possession. Additionally, as to the remaining items taken from the Coffman residence, Appellant did not offer any explanation for his recent possession of those items.

Under these facts, the trier of fact was presented with sufficient evidence to permit it to infer that Appellant's possession of items taken from Ms. Coffman's home was circumstantial evidence of his guilt. Appellant's fourth issue is overruled.

REFORMATION OF JUDGMENT

In reviewing the judgment, it has come to this court's attention that it contains several errors. Under the summary portion of the judgment under Plea to Offense, it recites that Appellant entered a plea of "GUILTY"; whereas the reporter's record reflects that Appellant entered a plea of "not guilty." Additionally, the record reflects that Appellant pleaded "true" to two enhancements whereas the summary portion of the judgment provides "N/A" under "Plea to 2nd Enhancement/Habitual Paragraph."

This court has the power to modify the judgment of the court below to make the record speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). Appellate courts have the power to reform whatever the trial court could have corrected by a judgment *nunc pro tunc* where the evidence necessary to correct the judgment appears in the record. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). The power to reform a judgment is "not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Id.* at 529-30.

14

CONCLUSION

We reform the judgment to reflect "Not Guilty" under <u>Plea to Offense</u> and to provide "True" under "Plea to 2nd Enhancement/Habitual Paragraph." As reformed, the trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.