In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00453-CR**
**NO. 09-16-00454-CR**

_____

**JOSEPH ALLEN EDWARDS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause Nos. 16-10-11914-CR & 16-10-11915-CR**

**MEMORANDUM OPINION**

After the trial court denied Joseph Allen Edwards's motion to suppress, a jury found him guilty on two charges, possession with the intent to deliver methamphetamine and possession with the intent to deliver hydrocodone. *See* Tex. Health & Safety Code Ann. § 481.112 (West 2017). Edwards elected to appeal, and in two issues he argues that the trial court committed error by denying his motion to

1

suppress. Because the trial court did not abuse its discretion when it allowed evidence relevant to the warrantless search of Edwards's car, we affirm.

Background

In early February 2016, Edwards, who was on parole based on another conviction involving illegal drugs, appeared at Montgomery County's parole office to provide the Parole Department with a sample of his urine. The parole officer who accompanied Edwards to the restroom discovered Edwards in the restroom with an apparatus designed to allow a person to provide a fake sample. After the parole office contacted the police, the police arrested Edwards for trying to falsify the test. Before he left the parole office, Edwards left the keys to the car he had parked in the parole office's parking lot at the parole office. He requested that one of the parole officers call his grandparents and ask them to come pick up his car.

Upon being booked into jail, police found Edwards with around $12,000 in cash, with the bills banded together in a roll. Detective Joseph Foxworth learned that Edwards was arrested after trying to fake his urine test and on being booked into the jail had a large sum money on him. Detective Foxworth testified in the proceeding below that this information made him suspicious that Edwards might be trafficking in narcotics. Foxworth explained that he learned that Edwards was driving a rented

2

car. According to Foxworth, based on his experience, people involved in selling illegal drugs often use rental cars to traffic narcotics.

Foxworth went to the parole office about three hours after Edwards's arrest. When he got there, he discovered that Edwards's car was still in the parole office's lot, and he learned that Edwards had arranged to have someone come to the office to pick up his car. Based on Detective Foxworth's testimony, the trial court could have inferred that Detective Foxworth had no idea how long it might take the people to pick up Edwards's car.

Foxworth did a visual inspection on Edwards's car. He saw no signs of drugs or drug paraphernalia inside the car. Foxworth then asked Officer Patrick Jolly, another police officer, to come to the parole office with his trained dog so the dog could sniff Edwards's car for drugs.

Officer Jolly testified in both the trial and the suppression hearing. According to Jolly, the dog he took to the parole office is trained to identify various drugs, including "marijuana, heroin, cocaine, methamphetamine, and Ecstasy[.]" Officer Jolly testified that when his dog sniffed the car, the dog signaled that it smelled contraband. After the dog alerted on the car, Foxworth and Jolly searched it and found a glass pipe, with residue in it, under the front passenger seat. Behind the

driver's position in the rear floorboard of the car Officer Jolly found a bag with many pills along with a set of digital scales.

A forensic scientist at the Department of Public Safety's Crime Lab tested the pills from the bag recovered from Edwards's car, which she received from the police. The forensic scientist testified during the trial that the tests she ran on the pills show the pills contain methamphetamine and hydrocodone.

The trial court admitted the evidence that the police discovered during their search of Edwards's car. Although Edwards moved to suppress that evidence, the trial court denied his request. When the jury returned a verdict, it found Edwards guilty of possessing hydrocodone and possessing methamphetamine with the required intent to deliver each of the illegal drugs.

Standard of Review

We use a bifurcated standard when reviewing a trial court's ruling on a motion to suppress. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). Under that standard, we give the trial court's findings of historical fact almost total deference if the trial court's express and implied findings are supported by the evidence. *Id*. Likewise, if the trial court resolves a motion to suppress based on a resolution of mixed question of law and fact, its evaluation of the credibility and demeanor of the witnesses is

4

given almost total deference. *Id.* In contrast, if the trial court's findings do not depend on the trial court's evaluations of the credibility and demeanor of the witnesses or turned on resolving a pure question of law, we review its ruling using a de novo standard. *Id.* (citing *Montanez v. State*, 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)); *Guzman,* 955 S.W.2d at 89.

The record before us reveals that Edwards did not ask the trial court to prepare written findings and conclusions explaining its ruling on Edwards's motion to suppress. Because there are no written findings in the record, we "impl[y] the necessary fact findings that would support the trial court's ruling if the evidence (viewed in the light most favorable to the trial court's ruling) supports these implied fact findings." *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006); *accord State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

## Analysis

Edwards filed a brief in which he raises two issues challenging the validity of the two judgments. In issue one, Edwards argues that because the police had sufficient time to obtain a warrant to search the car, the warrantless search was illegal. According to Edwards, given the time that Detective Foxworth had to obtain a warrant, the search-incident-to-arrest and automobile exceptions to the general rule requiring search warrants do not apply to his case. In response, the State argues that

5

the evidence showing that Officer Jolly's trained dog alerted on Edwards's car gave police the probable cause they needed to search his car without getting a warrant.

In his second issue, Edwards argues the trial court should not have allowed Officer Jolly to testify as an expert about his dog's ability to detect the odor of illegal drugs. According to Edwards, the State, through Officer Jolly, failed to provide the trial court with sufficient evidence that Officer Jolly's dog could reliably detect illegal drugs. In response, the State argues that the trial court did not abuse its discretion by finding (implicitly) that the evidence supported the trial court's conclusion that Officer Jolly's dog could reliably detect the odor of illegal drugs.

Edwards's argument that police had to obtain a warrant before searching his car relies mainly on his claim that the police had sufficient time to do so. Edwards relies on the general constitutional requirements imposed on states through the Fourth Amendment to support his argument, as it protects citizens against unreasonable searches and seizures. *See* U.S. CONST. amend. IV. Yet several recognized exceptions exist to the Fourth Amendment's general requirement that police obtain a valid warrant before conducting a search. These include the consent exception, the exigency exception, the automobile exception, the search-incident-to-

arrest exception, and the special-needs exception.[1] The Court of Criminal Appeals

has explained that

> [e]vidence seized by the police without a warrant may be admitted only if an exception to the Fourth Amendment's warrant requirement applies. A defendant challenging the admission of evidence on the basis of the Fourth Amendment bears the initial burden to prove that the search occurred without a warrant. If the defendant meets this burden, the burden then shifts to the State to prove that an exception applies.

*Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008).

One of the recognized exceptions to the warrant requirement "holds that the

police may lawfully search an automobile if they have probable cause to believe that

the vehicle contains evidence of a crime." *Id.* (citing *Wiede v. State*, 214 S.W.3d 17,

24 (Tex. Crim. App. 2007)). The exception applies when the evidence relevant to

the search shows that the car "'is readily mobile and there is probable cause to

believe that it contains contraband.'" *Marcopoulos v. State*, 538 S.W.3d 596, 599

(Tex. Crim. App 2017) (quoting *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim.

App. 2009)).

Based on the evidence relevant to the search on Edwards's car, the trial court

could reasonably find that when police searched Edwards's car, it was readily

---

[1] *See State v. Rodriguez*, 521 S.W.3d 1, 9-10 (Tex. Crim. App. 2017) (citing *O'Connor v. Ortega*, 480 U.S. 709 (1987); *California v. Carney*, 471 U.S. 386 (1985); *Mincey v. Arizona*, 437 U.S. 385 (1978); *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973); *U.S. v. Robinson*, 414 U.S. 218 (1973)).

mobile. *See Keehn*, 279 S.W.3d at 335 (noting that one of the two reasons that justify applying an exception to the general rule requiring police to obtain a search warrant is that automobiles are readily mobile). Edwards had driven the car to the parking lot the same day it was later searched, and no evidence in the record shows that anything happened to the car that made it immobile.

Moreover, because Edwards's car was in the public part of a business's parking lot, Detective Foxworth had the right to direct Officer Jolly to have his dog sniff the car even if police also suspected before they had the dog sniff the car that the car might contain drugs. *See State v. Weaver*, 349 S.W.3d 521, 527 (Tex. Crim. App. 2011). When Officer Jolly's trained dog signaled that it had detected contraband in Edwards's car, probable cause existed for the search even if police could have obtained a warrant. *Matthews v. State*, 431 S.W.3d 596, 603-04 (Tex. Crim. App. 2014) (noting that if a dog trained to detect drugs alerts, "the presence of drugs is confirmed, and police may make a warrantless search"). We overrule Edwards's first issue.

In issue two, Edwards argues that the trial court abused its discretion by finding (implicitly) that Officer Jolly's dog could reliably detect the odor of illegal drugs. According to Edwards, the evidence failed to allow the trial court to conclude

that Officer Jolly and his dog had sufficient training to show that his dog could reliably detect drugs.

The record shows that both in the hearing conducted on his motion to suppress and in the trial, Edwards relied on Rule 702 of the Rules of Evidence when objecting to Officer Jolly's testimony about whether the dog could reliably detect the presence of illegal drugs. *See* Tex. R. Evid. 702 (allowing expert testimony if the opinion will help the trier of fact determine a fact in issue). Because the trial court overruled Edwards's motion to suppress and the objections Edwards made to Officer Jolly's testimony, we imply the trial court found that Officer Jolly's dog had sufficient skills and a proven track record showing that it could reliably detect contraband. *See Kelly*, 204 S.W.3d at 818-19. The United States Supreme Court has explained that in the context of a dog trained to sniff for drugs, the dog's "satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Florida v. Harris*, 568 U.S. 237, 246 (2013).

During the suppression hearing, Officer Jolly addressed the training that he and his dog have gone through to detect the presence of contraband. He explained that based on their training with the National Narcotic Detector Dog Association, they held certifications and that the Association has renewed their certifications annually for the four-year period before he searched Edwards's car. According to

Officer Jolly, the certifications were valid when his dog sniffed Edwards's car. Officer Jolly testified in some detail about his training with the dog, explaining that they participate in weekly sessions designed to reinforce the dog's skills in detecting the presence of illegal drugs. According to the officer, based on his experience over the past four years, the dog that sniffed Edwards's car rarely signals that contraband is present when it is not.

The evidence before the trial court about the dog's and the officer's training address matters of historical fact. Giving the trial court's findings almost total deference, we conclude that the trial court did not abuse its discretion by finding that the evidence about the search would be helpful to the jury's evaluating the dog's ability to detect the smell of illegal drugs. Because Edwards fails to show that the trial court abused its discretion by admitting the evidence he objected to in the trial, we overrule both issues he raises in his appeals.

We affirm the trial court's judgments.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on May 30, 2018
Opinion Delivered October 17, 2018
Do Not Publish
Before McKeithen, C.J, Horton and Johnson, JJ.

10